McMillan et al. v. Ohio Civil Rights Commission et al.

(No. A-733935—Decided February 8, 1974.)

Court of Common Pleas of Hamilton County.

*Mr. Donald E. Hardin,* for plaintiffs.

*Mr. Andrew J. Ruzicho* and *Mr. Alan A. Rudnick,* assistant attorneys general, for defendant Ohio Civil Rights Commission.

*Mr. Paul R. Berninger,* assistant city solicitor, for defendants city of Cincinnati, Col. Carl V. Goodin, Chief of Cincinnati Police Division, and Captain Norman Hughes.

Castle, J. Plaintiffs are three officers of the city of Cincinnati, Police Division, who bring this action on be-

half of themselves and all other members of the Cincinnati Police Division. The relief sought is in the nature of a declaratory judgment, asking the court to determine the rights, duties and responsibilities of the several parties to the action and a permanent injunction prohibiting the release of the personnel files of all members of the Cincinnati Police Division, as well as the files of the internal investigation section of the Cincinnati Police Division, to the Ohio Civil Rights Commission or any other agency or individual. The defendant Civil Rights Commission admits the allegations contained in paragraphs 1 and 2 of the amended complaint and denies all other allegations contained in that pleading. The defendants city of Cincinnati, Carl V. Goodin and Norman Hughes for their answer admit the allegations contained in paragraphs 1, 2, 3 and 4 of the complaint, deny specifically that the contents of the personnel files on the plaintiff officers maintained by the division of police contain any information given in violation of the Fifth Amendment to the U. S. Constitution and Section 10, Article I of the Ohio Constitution, and generally deny all other allegations contained in the plaintiffs' complaint.

The defendant Carl V. Goodin affirmatively pleads his right as the Chief of the Cincinnati Police Division to withhold from discovery documents or material which it is alleged are confidential and the disclosure of which would be detrimental to the efficient operation of the police division on the grounds of an exercise of executive privilege.

This action finds its origin in a complaint filed with the Ohio Civil Rights Commission by one Anthony Holt, a former member of the Cincinnati Police Division, who was discharged. Mr. Holt claimed that his termination on July 22, 1972, was discriminatory for the reason that the Cincinnati Police Division applies different standards in disciplining black policemen in the division than the standards applied to white policemen. Upon the filing of the charge affidavit with the Civil Rights Commission by Holt on August 29, 1972, the Civil Rights Commission initiated an investigation of the charge, which included contacts by a

Mr. William Garven, an investigator of the commission, with Chief Goodin and other members of the Cincinnati Police Division. The chief supplied Mr. Garven with a file concerning Anthony Holt and with various documents concerning the division's policies in disciplinary matters taken against officers who had violated the law and/or division regulations. Subsequently, on or about the 17th day of May, 1973, the commission issued a *subpoena duces tecum* to Captain Norman Hughes, the personnel section commander of the police division, ordering him to appear before the commission with files of eleven members of the division including the three plaintiff police officers in the instant case. This action, led to the within cause being brought in this court on May 25, 1973. This court issued a temporary restraining order. Subsequently, that restraining order was extended for an additional 14 days and on July 5, 1973, a preliminary injunction was issued by the court. The cause then came on for hearing on August 16, 1973, on the merits. The evidence was presented to the court; counsel for the parties subsequently filed post-trial briefs; oral argument was then had; and the case was submitted to the court for decision.

The issues for determination are as follows: Are the members of the Cincinnati Police Division in a position to assert a violation of their constitutional guarantees against self-incrimination in this case where: (1) The uncontroverted evidence discloses that it has been and is the policy of the Cincinnati Police Division to require members of the division to give statements concerning their activities where complaints of alleged violation of division regulations or law are under investigation by the division; (2) the member being so investigated is not advised of his rights; (3) is not entitled to have an attorney present; and (4) makes statements under pain and penalty of disciplinary action which might lead to dismissal if such statements are not made? Is the chief of the police division entitled to withhold personnel files of members of the division or parts thereof from the Civil Rights Commission when a subpoena has been issued ordering the production of such files? Does

the Ohio Civil Rights Commission have the absolute right to a production of such records by reason of the subpoena power granted to the commission by R. C. 4112.04?

During the course of trial there was produced for the court for its *in camera* inspection the eleven personnel files sought by the Civil Rights Commission in its subpoena. The Attorney General indicated in the record that the only reason the Civil Rights Commission was interested in the files subpoened was to determine whether or not Mr. Holt, who is a black man, was discriminatorily fired because of his race. It would appear that there is no claim at this time that the Cincinnati Police Division discriminates in its hiring practices but rather there is a question presented as to division practices concerning disciplinary action taken.

It is the function of the defendant commission, as provided by R. C. 4112.02, to determine whether or not an *employer* which includes the state or any political subdivision thereof discriminates against any person in its employment practices, including hire, tenure, terms, conditions or privileges of employment because of race, color, religion, national origin or ancestry. R. C. 4112.04(B)(3) provides, in part:

''[The commission may] hold hearings, subpoena witnesses, compel their attendance, administer oaths, take the testimony of any person under oath, and require the production for examination of any books and papers relating to any matter under investigation.''

Sub-paragraph (a) of that section provides, in part, as follows:

''In conducting a hearing or investigation the commission shall have access at all reasonable times to premises, records, documents, individuals and other evidence or possible sources of evidence and may examine, record, and copy such materials and take and record the testimony or statements of such persons *as are reasonably necessary for the furtherance of the investigation.* * * * The Commission or a Commissioner may issue subpoenas to compel access to or the production of such materials * * * *to the same extent and subject to the same limitations as would*

*apply if the subpoenas or interrogatories were issued or served in aid of a civil action in a Common Pleas Court. No person shall be compelled to be a witness against himself.''* (Emphasis added.)

Rule 26(B)(1) of the Ohio Rules of Civil Procedure provides, in part, as follows:

"Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter * * *.''

Subdivision (C) of that rule provides that the court may make protective orders when justice requires including several specific situations. Rule 34 applies to the production of documents and things for inspection and copying subject to the scope of the discovery provisions of Rule 26(B).

Coming first to the question of whether the plaintiffs in this case have standing to invoke a privilege against self-incrimination, it is clear from the evidence in the record and the *in camera* inspection of the eleven personnel files previously referred to that plaintiffs and others, under threat of disciplinary action made statements to supervisory personnel of the police division, which could tend to incriminate them. In a similar situation the U. S. Supreme Court in *Garrity* v. *New Jersey* (1967), 385 U. S. 493, held that such statements lacked any element of voluntariness and hence such statements could not be used in subsequent criminal proceedings. In light of this pronouncement of the law this court fails to discern the merit of plaintiffs' claim that the subject personnel files should not be produced on the grounds that statements contained in such files might be used against them in some future criminal proceeding.

The court now addresses itself to the more complex, recondite issue in this case, that being Chief Goodin's assertion of an executive privilege meriting protection by the court. The evidence is clear that the regulations of the Cincinnati Police Division presume and mandate that the material contained in a member of the division's personnel file shall remain confidential. The personnel jacket itself

carries the legend "caution this record is confidential." The personnel record maintained by the division on each of the members of the division is divided into two parts. The first part, titled "left section," is intended to contain material under the following headings: investigation report, personnel history, property assigned, administrative remarks, continuous service record. The second part, titled "right section," incorporates material under the following headings: miscellaneous, accident driver record, report of injuries, efficiency rating percentile, disciplinary action, commendation. Included in the personnel files are internal investigation reports, statements made by the officer being investigated, statements made by fellow officers pertaining to the investigation, statements made by complaining citizens concerning the conduct of members of the division, and other similar information pertinent to the internal investigatory process of the police division. Also contained in each file is a Form 450, "Summary of Disciplinary Action," which summarizes in brief form the nature of the violation and penalty imposed, and in some files, a Form 32, where the disciplinary action taken was of a more serious magnitude, and a Form 66-5, "Official Reprimand."

Paraphrasing Chief Goodin's testimony, it is his opinion that to violate the confidential character of the internal investigatory process would preclude him from thoroughly investigating citizens' complaints and alleged violations of the law or division regulations by members of the division and would substantially inhibit his ability to control and handle the accountability of members of the division in the exercise of their authority.

The evidence further discloses that some of the data contained in each personnel file are duplicated in the files of the Civil Service Commision of the city of Cincinnati which are maintained on all city employees. The civil service file or employment record includes information pertaining to the identification of the employee such as date of birth, name, address, telephone number, permanent or temporary classification, department of the city to which the

employee is assigned plus a running record of tests given, scores received, performance ratings, promotions, disciplinary action taken, some pre-employment information given by applicant, including testing, and in some cases where disciplinary action which comes within the cognizance of the civil service commission has been taken by the city, a Form 32 which is titled "City of Cincinnati, Notice of Disciplinary Action, Separation or Layoff."

The Attorney General argues that inasmuch as Chief Goodin has released the entire internal investigation file on Anthony Holt, he has thereby waived any executive privilege which he might, *arguendo*, have had. The circumstances surrounding the release of the Holt file together with the law do not support this contention. 20 Ohio Jurisprudence 2d 465 *et seq*.

Counsel and the court have diligently researched the reported case law in this country pertaining to the question of confidentiality of police records. From our research there appears to be a paucity of reported cases dealing with this subject. The leading case in Ohio, *In re Story* (1953), 159 Ohio St. 144, was a habeas corpus proceeding involving the chief of the police department of the city of Cleveland. In that case the chief refused to produce certain records of the police department of the city, which were described in a *subpoena duces tecum*. This subpoena had been served upon him in connection with the taking of a deposition in a civil action, an action which had been brought by the administrator to recover for the decedent's wrongful death, a death claimed to have been caused by two police officers of the city. The syllabus in that case reads as follows:

"One, having custody and control of the records of a city police department made in the detection and prevention of crime, is not generally privileged from disclosing those records upon the taking of a deposition in a civil suit."

The court in its opinion, at page 148, cited 8 Wigmore on Evidence (3 Ed.), Section 2192, including this language:

" '* * * when the course of justice requires the investigation of the truth, no man has any knowledge that is rightly

private. All that society can fairly be expected to concede is that it will not exact this knowledge when necessity does not demand it, or when the benefit gained by exacting it would in general be less valuable than the disadvantage caused and the various privileges are merely attempts to define the situations in which, by experience, the exaction would be unnecessary or disadvantageous.* * *' "

The court then in the final sentence of its opinion said:

"We conclude that this court should usually rely on the General Assembly to provide for instances of privilege and only in extreme cases recognize such instances where they have not been provided for by statutory or constitutional provisions."

This court is of the opinion that the facts in the case at bar are clearly distinguishable from the facts in *Story*, and therefore the general rule enunciated by the Supreme Court is not controlling.

Another Ohio case is cited in this opinion only for the the purpose of demonstrating that the courts have fashioned categories of privilege outside statutory provisions. The Ohio Supreme Court in *State* v. *Phillips* (1971), 27 Ohio St. 2d 294, had before it the question of the privilege to withhold the disclosure of an informer's identity, and cited a collection of state and federal decisions supporting the application of such a privilege.

In a recent case, *City of Los Angeles* v. *Superior Court for County of Los Angeles* (1973), 33 Cal. App. 3d 778, 109 Cal. Rptr. 365, the Court of Appeals, Second District, Division 2, held, among other things, that information contained in a police officer's personnel file was privileged and did not have to be produced. In that case the city, which was a defendant in a personal injury action arising out of an alleged assault made on a plaintiff by a police officer, sought a writ of mandate to overturn the Superior Court order providing that challenged interrogatories should be answered and the personnel file of the officer be produced. The Court of Appeals judge in his opinion in that case said in support of his holding, at page 785:

"* * * Such raw data—which may include unverified

and unfounded complaints, confidential investigations on the officer by his colleagues and superiors, and such privileged material as medical and psychiatric examinations—is not lightly to be invaded.''

The court then went on to quote language used by a federal district court in the case of *Kott* v. *Perini* (N. D. Ohio 1968), 283 F. Supp. 1, as follows:

'' '* * * The members of the police department must be able to rely on their confidential records and notations being preserved for their internal use for if it were otherwise, the knowledge that some of the confidential information recorded might be later exposed to outside parties would have a certain and chilling effect upon the internal use of such record making.' ''

The *Kott* case was decided by the United States District Court, Northern District of Ohio, Western Division, on April 30, 1968. In a proceeding on a motion to quash a *subpoena duces tecum* directed to the Captain of the Canton, Ohio, Police Department, Judge Young held that records of a police department are privileged and not subject to *subpoena duces tecum*. Two other federal district courts have spoken on this subject. In the case of *Ballard* v. *Terrak* (E. D. Wisc. 1972), 56 F. D. R. 45, a civil rights action against a police officer of the city of Milwaukee, the police chief, who was not a party, petitioned the court for a protective order. The court held that the plaintiff was entitled to discovery of those records maintained by the police department in the ordinary course of its operation, but that the police chief was entitled to a protective order which would prevent discovery of those reports and testimony obtained by him to enable him to determine whether disciplinary action should be initiated against any police officers.

In another federal district court decision, *Wood* v. *Breier* (E. D. Wisc. 1972), 54 F. R. D. 7, originating in the same district of Wisconsin where *Ballard* was decided but approximately six months later, the court on January 11, 1972, in a civil rights action for financial and equitable relief against the police chief and members of the Fire and

92

Police Commission, held that the police chief was not entitled to a protective order preventing discovery of a police investigation made into the alleged assault on the plaintiff, since all material in the file was of a factual nature, since there was nowhere in the file recommendations for future action or criticisms of past actions and since the file was obviously highly relevant to the law suit. The court in its opinion said, on page 11:

"Defendant Breier's motion for suppression is premised on what is commonly termed executive privilege, a privilege claimed by a governmental body when it fears that discovery of its confidential information will seriously impair its ability to function. It is a privilege which should not be lightly invoked by the Government, for by invoking the privilege the case before the court may become a mockery with 'half-informed litigants who sometimes get justice, if at all, by accident.' Nor is the Government's assertion of the privilege conclusive upon the decision of the Government, for while such an assertion 'is entitled to great respect * * * it is the duty of the court to make an independent determination of whether a privilege does exist.' This judicial determination, however, cannot be made in abstract; rather it must be done on a case by case ad hoc basis by balancing the applicable public policies and the material sought to be discovered in each individual case."

One other federal decision has come to our attention, that being *Mackey* v. *United States* (1965), 351 F. 2d. 794, decided by the United States Court of Appeals, District of Columbia Circuit. In that case the defendant was convicted of a narcotics offense by Judge Alexander Holtzoff sitting in the United States District Court for the District of Columbia. The defendant appealed. In the trial court the defendant moved to dismiss the case for lack of a speedy trial and attempted to subpoena the records of the police department concerning the reasons for delay and the department's policy in undercover investigations. The trial court refused to subpoena the documents and subsequently found that there was no unreasonable delay. The Court of

Appeals held that it was harmless error to refuse the subpoena and that the motion of defendant to dismiss for lack of speedy trial was rightly denied. The court in its opinion said, at page 795:

"The Government may be required to produce documents in its possession unless it makes a valid claim of privilege. * * * Some, at least, of the documents which the appellant sought were material on the reasonableness of the delay and were necessary to appellant's case at the hearing. A subpoena should therefore have been issued."

Returning then to the facts of the instant case, we have on the one hand the statutory obligation of the Civil Rights Commission to investigate alleged discrimination and on the other hand the clear necessity to protect the confidentiality of certain records maintained by the Cincinnati Police Division. R. C. 4112.04, provides the tools to the commission for such investigatory proceedings by granting to it subpoena powers including the power to require production of documents which *"are reasonably necessary for the furtherance of the investigation,"* but subjecting that power to *"the same limitations as would apply if the subpoenas or interrogatories were issued or served in aid of a civil action in a Common Pleas Court."* (Emphasis added.) Applying the rules which have been articulated by the several courts in the decisions previously cited, the court must weigh in this case the relevance, reasonableness and necessity of the production of the personnel files sought by the commission through the issuance of its *subpoena duces tecum.* What then is the relevance and necessity of the commission's having the preemployment information contained in the eleven files which it seeks to discover when the discriminatory practice alleged and being investigated is the division policy concerning disciplinary. procedures appled to members of the division? This court can perceive of no such relevancy and necessity. Given the information obtainable through civil service commission files, plus the summary of disciplinary action form, plus Form 32's when applicable, plus the official reprimand form, what then is the necessity of the commission's obtaining for the

purpose of its investigation the entire personnel files of the eleven officers whose files were subpoenaed? This court is of the view that there is no need to obtain the entire files. The Ohio Civil Rights Commission has presented no evidence in this case in support of its position that the complete eleven files should be furnished to it. The commission simply asserts that it has the absolute right under its subpoena powers to have made available to it all of the files and all of the contents of those files which it has subpoenaed. With this contention the court cannot agree. Neither the law nor the provisions of R. C. Chapter 4112 permit unbridled and freewheeling use by the Ohio Civil Rights Commission of its subpoena powers. The documents sought to be subpoenaed must have some relevance to and be reasonably necessary in the furtherance of the investigation conducted by the commission. It is clear that a very real and very important need exists to maintain confidential integrity of the internal investigation in a police division. To do otherwise would seriously inhibit the chief in his control over the members of the division in their wide-ranging duties and responsibilities. The stream of information available to the chief from persons within and without the division would diminish to a bare trickle if the source or sources of this information was stripped of its confidential character. That such an event would serve to defeat the general public good is supported by a logic almost tautological in its persuasiveness—for the desirability of an efficient well-disciplined police force is manifest. And yet, to a similar degree, there can be no doubt of the long term importance of the commission's statutory mandate.

Balancing, then, these competing public interests so graphically illustrated by the evidence and argument, this court finds that the position of the city and the chief of police has prevailed in demonstrating by clear and convincing evidence the necessity of maintaining the privileged character of information obtained in the division's internal investigatory process. From the evidence and authorities produced the court is likewise convinced that the defendant Ohio Civil Rights Commission will suffer no serious im-

pediment in its investigatory processes by reason of this court's ruling.

It is therefore the order of this court that the defendant city of Cincinnati acting by and through its agents, officers or employees, and in particular the defendants, Carl V. Goodin and Norman Hughes, remove from the personnel files of the Police Division of the city of Cincinnati which may be produced in response to the *subpoena duces tecum* of the Ohio Civil Rights Commission now outstanding, or from any other files ordered to be produced by reason of further subpoenas that might be issued, all information pertaining to preemployment inquiry obtained from whatever source and in whatever form and further remove all information obtained from any source and in whatever form pertaining to internal investigations conducted by the police division relating to individual members of the Division.

It is the further order of the court that the defendant, the Ohio Civil Rights Commission, its officers, agents or employees are permanently enjoined in its investigation, known as "SW-8-72-1735," from issuing any other *subpoena duces tecum* to the city of Cincinnati, Ohio, or its officers, agents or employees in connection with the aforesaid investigation for the purpose of ordering the production of the entire personnel file of any other member of the police divison; however, further subpoenas may issue for personnel files with those certain contents as heretofore set forth in this order removed from such files.

*Judgment accordingly.*