FABER, Appellant and Cross–Appellee,

v.

QUEEN CITY TERMINALS, INC. et al., Appellees and Cross–Appellants.

[Cite as *Faber v. Queen City Terminals, Inc.* (1994), 93 Ohio App.3d 197.]

Court of Appeals of Ohio,
Hamilton County.

Nos. C–920760, C–920777.

Decided Feb. 16, 1994.

· *White, Getgey & Meyer Co., L.P.A.,* and *Ronald A. Meyer; Dennis A. Liggett;* and *Robert F. Alsfelder, Jr.,* for appellant/cross-appellee.

*Frost & Jacobs, William H. Hawkins II, Dennis J. Barron* and *Christopher P. Finney,* for appellees/cross-appellants.

HILDEBRANDT, Judge.

## I. STATEMENT OF FACTS AND PROCEEDINGS

Frances B. Faber, plaintiff-appellant/cross-appellee, is the lessor of a 6.52–acre parcel of land on the shore of the Ohio River near Cincinnati, Ohio. In 1978, Faber acquired the deed to that land, which, since 1907, had been subject to a ninety-nine-year lease. The terms of that lease give the lessee the right to renew in perpetuity. The current lessee is Queen City Terminals, Inc., defendant-appellee/cross-appellant. Queen City uses the land as a river, rail, and highway distribution facility for chemical and petroleum products.

The parcel is landlocked except for two "paper" streets, Hall and Tennyson Avenues, that formerly connected the 6.52 acres with Kellogg Avenue by crossing other land controlled by Queen City. In 1982, in its efforts to develop the land, Queen City requested that the city of Cincinnati vacate Hall and Tennyson Avenues. As requested, the city passed an ordinance that removed its legislative authority to control the streets. See, generally, R.C. 723.03 and 723.08.

In an additional effort to improve the land, Queen City sought to construct an earthen barrier along the property's boundary with the Ohio River. That barrier was designed to prevent flooding and damage to Queen City's facilities and storage tanks on the property. To build the barrier, Queen City again sought the approval of the Cincinnati City Council. The council agreed to allow the

construction and passed another ordinance outlining the conditions under which the wall could be built.

When Faber learned of these developments, she filed suit against Queen City, Lovett C. Peters, Frederic A. Stott, and Neuberne H. Brown (collectively, "QCT"). Faber claimed that QCT's actions were a breach of a covenant in the lease that prohibited the lessee from committing waste. Accordingly, Faber sought an order granting her full possessory rights in the property and enjoining QCT from building the wall. At the close of Faber's case in the subsequent trial, QCT made a Civ.R. 41(B)(2) motion requesting that the court dismiss Faber's claims. After concluding that QCT's actions were not waste, the court presented the parties with a "conditional" dismissal. The judge said that he would dismiss Faber's claims if the parties would enter into an agreement granting Faber easement rights over the disputed land. The parties both signed the easement, and the court entered a judgment dismissing the claims. From the court's order, both parties appeal.

## II. FABER'S ASSIGNMENTS OF ERROR: WASTE

### A. *Hall and Tennyson Avenues*

In her first assignment of error, Faber urges, as a threshold matter, that the trial court erred when it dismissed that portion of the complaint that claimed that the vacation of Hall and Tennyson Avenues was waste. Concerning waste, 1 Restatement of the Law 2d, Property (1977), Section 12.2(1) states that:

"[T]he tenant is entitled to make changes in the physical condition of the leased property which are reasonably necessary in order for the tenant to use the leased property in a manner that is reasonable under all the circumstances." [1]

To determine whether the tenant's use and anticipated changes are reasonable, the property's location, physical attributes, and past use must be considered. Restatement, *supra*, at Comment *c*. The assumption that the tenant is free to make reasonable changes is balanced by the protection of the landlord's reversionary interest. *Id.* The significance of the landlord's interest is determined by considering the length of the lease. Accordingly, the Restatement suggests that, in a one-year lease of residential property, the tenant would be

---

1. Regarding landlord-tenant law specifically, the Ohio Supreme Court has cited the Restatement of Law 2d, Property with approval in the following cases: *Miller v. Ritchie* (1989), 45 Ohio St.3d 222, 225–226, 543 N.E.2d 1265, 1269–1270 (Section 11.1); *Shroades v. Rental Homes, Inc.* (1981), 68 Ohio St.2d 20, 24, 22 O.O.3d 152, 154–155, 427 N.E.2d 774, 777 (Section 17.6); *Strayer v. Lindeman* (1981), 68 Ohio St.2d 32, 34–35, 22 O.O.3d 159, 160–161, 427 N.E.2d 781, 784 (Sections 19.1 and 19.3); *Myers v. E. Ohio Gas Co.* (1977), 51 Ohio St.2d 121, 124, 5 O.O.3d 103, 105, 364 N.E.2d 1369, 1372 (Sections 1.6 and 20).

committing waste by removing a partition between two rooms to create greater living space. *Id.* at Comment *d,* Illustration 7. This is contrasted to a ninety-nine-year lease of residential property, which, after ten years, is entirely surrounded by commercial business. In that case, if the natural commercial use of the property is a parking lot, it would not be waste for the tenant to raze the building to take advantage of the increase in value for the remaining term of the lease. *Id.* at Illustration 8.

■ In Ohio, concerning perpetual leases particularly, the subject property "is a leasehold estate in name and in form only." *Ralston Steel Car Co. v. Ralston* (1925), 112 Ohio St. 306, 312, 147 N.E. 513, 515. Even though the lessor retains the nominal fee when the perpetual lease is granted, in effect, he or she parts with the entire estate. *Rawson v. Brown* (1922), 104 Ohio St. 537, 543–544, 136 N.E. 209, 211; *Ralston Steel Car* at 312, 147 N.E. at 515. In return, the lessor receives perpetual payments, which are secured by a lien on the property. *Ralston Steel Car* at 312, 147 N.E. at 515.

■ When the trial court considers a motion to dismiss under Civ.R. 41(B)(2), it weighs the evidence, resolves conflicts, and, if the plaintiff has failed to show any right to relief, grants a judgment for the defendant. *Bank One, Dayton, N.A. v. Doughman* (1988), 59 Ohio App.3d 60, 62–63, 571 N.E.2d 442, 444; *Levine v. Beckman* (1988), 48 Ohio App.3d 24, 548 N.E.2d 267. The appellate court will not reverse the judgment unless it is erroneous as a matter of law or against the manifest weight of the evidence. *Bank One,* 59 Ohio App.3d at 63, 571 N.E.2d at 444; *Uihlein v. Lauch* (Jan. 29, 1992), Hamilton App. No. C–900907, unreported, 1992 WL 14329. When there is competent, credible evidence to support the trial court's factual findings, the court of appeals will not disturb the judgment as against the manifest weight of the evidence. *C.E. Morris Co. v. Foley Constr. Co.* (1978), 54 Ohio St.2d 279, 8 O.O.3d 261, 376 N.E.2d 578, syllabus.

■ In this case, the length of the lease is the longest term possible—it is perpetual. Therefore, according to the Restatement, *supra,* at Comment *c,* the lessor's reversionary interest is proportionally insignificant. Moreover, the change made by the street vacation is correspondingly slight. The General Assembly has provided that when a city vacates a street, "the right of way and easement therein of any lot owner shall not be impaired by such order." R.C. 723.08; see, also, *Taylor v. Carpenter* (1976), 45 Ohio St.2d 137, 74 O.O.2d 257, 341 N.E.2d 843; *Kinnear Mfg. Co. v. Beatty* (1901), 65 Ohio St. 264, 286, 62 N.E. 341, 346 (construing R.S. 2654, the predecessor to R.C. 723.08). Therefore, the vacation does not make a change that is relevant to Faber because any right that she had in Hall and Tennyson Avenues is preserved by the statute.

Faber argues, nonetheless, that her rights will not be preserved by R.C. 723.08 because she cannot show a "reasonable need" for the streets. She reasons that, because she currently does not have possession of the parcel, she does not have a reasonable need for access to the property. She concludes, therefore, that her rights will be lost by the vacation of the streets. In support of this proposition she cites *Babin v. Ashland* (1953), 160 Ohio St. 328, 52 O.O. 212, 116 N.E.2d 580; *New York, Chicago & St. Louis RR. Co. v. Bucsi* (1934), 128 Ohio St. 134, 190 N.E. 562; *Kinnear Mfg.*, 65 Ohio St. at 286, 62 N.E. at 346.

Her argument fails because the "reasonable need" required by the Ohio Supreme Court refers to the property owner's alternate means of access, not his or her current possessory rights in the property. In *Babin, New York, Chicago & St. Louis RR.* and *Kinnear Mfg.*, the landowners sought to prevent vacation of public streets. In all three cases, the protesting landowners were not able to show a reasonable need to halt the vacation because they had alternate routes to gain access to their property. *Babin,* 160 Ohio St. at 349, 52 O.O. at 221–222, 116 N.E.2d at 591; *New York, Chicago & St. Louis RR.,* 128 Ohio St. at 139–140, 190 N.E. at 564; *Kinnear Mfg.,* 65 Ohio St. at 281, 62 N.E. at 344. In this case, on the record before us, there does not appear to be any alternate route of access to the 6.52–acre parcel. Consequently, the reasonable-need requirement of *Babin, New York, Chicago & St. Louis RR.* and *Kinnear Mfg.* does not apply to this dispute. Therefore, the cases cited by Faber do not eliminate the protection in R.C. 723.08, and the statute, in turn, will preserve any right that Faber has to gain access to the land.

Therefore, the trial court did not err by concluding that it was not waste for QCT to vacate Hall and Tennyson Avenues. The first assignment of error is overruled.

## B. *Earthen Barrier*

In her second assignment of error, Faber argues that the trial court erred by not enjoining the construction of the earthen barrier being built by QCT. Faber claims that the earthen barrier also is waste. When a trial court makes a decision not to order a permanent injunction, the court of appeals will not reverse its judgment unless its action is unreasonable, arbitrary, or unconscionable. *Garono v. State* (1988), 37 Ohio St.3d 171, 173, 524 N.E.2d 496, 498. An action is unreasonable if there is no sound reasoning process that would support the decision by the trial court. *AAAA Enterprises, Inc. v. River Place Community Urban Redev. Corp.* (1990), 50 Ohio St.3d 157, 161, 553 N.E.2d 597, 601.

In this case, the record contains evidence that the changes created by the earthen barrier are not great. Therefore, considering the ninety-nine-year,

perpetual lease, the court did not err by concluding that the barrier was not waste. Consequently, there was a sound reasoning process to support the court's decision not to order an injunction. The second assignment of error is overruled.

### III. QCT'S CROSS–ASSIGNMENT OF ERROR: CONDITIONAL DISMISSAL

In its sole cross-assignment of error, QCT claims that the trial court erred by granting a "conditional" dismissal under Civ.R. 41(B)(2). QCT argues that because Faber did not prove that QCT committed waste, the court should have dismissed her claims unconditionally.

A party in litigation may not "intentionally or unintentionally * * * induce or mislead a court into the commission of an error," then seek reversal on those very grounds. *Lester v. Leuck* (1943), 142 Ohio St. 91, 93, 26 O.O. 280, 281, 50 N.E.2d 145, 146; see, also, *Ctr. Ridge Ganley, Inc. v. Stinn* (1987), 31 Ohio St.3d 310, 313, 31 OBR 587, 589–590, 511 N.E.2d 106, 109. For example, a party cannot request erroneous jury instructions, then seek reversal complaining that the court gave the incorrect instructions. *Lester*, 142 Ohio St. at 92, 26 O.O. at 281, 50 N.E.2d at 145–146. Similarly, a litigant who requests a continuance in proceedings before an administrative agency cannot appeal claiming that the agency's final determination was not timely. *Hal Artz Lincoln–Mercury, Inc. v. Ford Motor Co.* (1986), 28 Ohio St.3d 20, 28, 28 OBR 83, 89–90, 502 N.E.2d 590, 596–97, fn. 16.

In this case, when QCT finished its oral argument in support of its motion to dismiss, it proposed a solution to the court, in an apparent attempt to provide Faber an acceptable remedy short of reversion. QCT encouraged the court to break the impasse by including in its order the statement that Faber had the right to "ingress and egress, the right to pave, the right to run utilities." After a twenty-minute recess, the court proposed the conditional dismissal and asked QCT to draft the easement language. Both parties agreed and later signed the document that is now part of the dismissal order.

Although the conditional dismissal may have been improper, QCT is precluded from complaining about the alleged error on appeal. Consequently the assignment of error is overruled.

### IV. CONCLUSION

The record contains competent, credible evidence to support the trial court's factual finding that the vacation of Hall and Tennyson Avenues was not waste. Similarly, the record does not reveal that the trial court abused its discretion by refusing to grant an injunction to prevent QCT from building a proposed earthen

barrier. Finally, because the elements of the conditional dismissal were originally proposed by QCT, it is precluded from appealing the trial court's decision to include the easement language in its order.

The judgment of the trial court is affirmed.

*Judgment affirmed.*

SHANNON, P.J., and DOAN, J., concur.