ALPHA BENEFITS AGENCY, INC., Appellant,

v.

KING INSURANCE AGENCY, INC. et al., Appellees.

[Cite as *Alpha Benefits Agency, Inc. v. King Ins. Agency, Inc.* (1999), 134 Ohio App.3d 673.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 74623.

Decided Sept. 13, 1999.

674

*Maria L. Shinn,* for appellant.

*Jack Fynes,* for appellees.

TIMOTHY E. MCMONAGLE, Judge.

Plaintiff-appellant, Alpha Benefits Agency, Inc., appeals the decision of the Cuyahoga County Court of Common Pleas directing a verdict in favor of defendants-appellees, King Insurance Agency, Inc., Ronald King, and Robert Gordon, because appellant failed to prove the damages element of its breach-of-contract claim. Because the trial court refused to allow appellant to discover any information regarding its damages during discovery or to prove its damages at trial, we reverse.

Appellant is an Ohio company engaged in the business of selling health and other lines of insurance. The King Agency is also an Ohio corporation engaged in the business of selling health and life insurance. Ronald King is the majority owner and president of the King Agency. Robert Gordon was an employee of the King Agency at all times relevant to this action.

Although this appeal originated from case No. 326049, appellant first filed suit against appellees on April 27, 1995 in case No. 288533. Appellant's complaint in case No. 288533 alleged that in 1991, appellant entered into an oral agreement with the King Agency, wherein appellant agreed to be a subagent for King Agency for the sale of health insurance for Blue Cross and Blue Shield of Ohio, now known as Medical Mutual of Ohio. Appellant alleged that pursuant to this oral agreement, King Agency agreed to pay appellant, in addition to standard commissions and a share of the commission override, its proportionate share of the profitability bonus received by King Agency from Blue Cross and Blue Shield. Appellant's complaint alleged that appellees breached this agreement by refusing to pay appellant its proportionate share of the profitability bonus in 1992 and 1993 and that appellees entered into the agreement with an intention not to comply with its terms and, thus, defraud appellant.

After filing its complaint, appellant requested discovery from appellees regarding the relationship between appellant and appellees in 1992 and 1993, any profitability bonus received by King Agency from Blue Cross in 1992 and 1993 or paid by King Agency to its other subagents in those years, and the identity of persons with knowledge about the profitability bonus or the relationship between

appellant and appellees. Appellant also subpoenaed Blue Cross to produce information and documents regarding compensation paid by Blue Cross to King Agency in 1992 and 1993, the names of King Agency's other subagents, and the subagents' share of King Agency's business in 1992 and 1993.

In response to appellant's discovery efforts, appellees and Blue Cross filed motions for protective orders, arguing that the discovery was irrelevant and unduly burdensome to produce and constituted proprietary/confidential information that appellant should not be allowed to obtain. The trial court granted appellees' and Blue Cross's motions. Subsequently, appellant voluntarily dismissed its case pursuant to Civ.R. 41.

Appellant refiled its complaint on January 22, 1997. Appellant's refiled complaint, assigned case No. 326049, alleged the same causes of action as its first complaint: breach of contract and fraud. Appellees' answer to appellant's refiled complaint differed, however, from their answer in the first action. In addition to asserting eight, rather than six, affirmative defenses, appellees filed a counterclaim against appellant, alleging that they had incurred "substantial additional expenses and costs of overhead and administration, as well as lost profits" as a result of appellant's alleged negligent and fraudulent misrepresentations and claiming damages of $100,000.

Appellant then again attempted to obtain discovery from appellees by serving twenty-six interrogatories on appellees. Interrogatories two through seven sought information regarding the amount of commissions and bonuses paid by King Agency to appellant in 1992 and 1993 and how those commissions and bonuses were calculated. Interrogatories eight through sixteen sought information regarding the amount of business King Agency wrote for Blue Cross and Blue Shield in 1992 and 1993, any profitability bonus paid by Blue Cross to King Agency on that business, and the method of computing the profitability bonus. Interrogatories seventeen through twenty-one asked about the factual bases for the affirmative defenses raised by appellees in their answer; interrogatories twenty-two through twenty-four sought the names of possible witnesses; and interrogatories twenty-five and twenty-six asked about the location of Blue Cross and Blue Shield documents concerning the method of computing the profitability bonus.

When appellees refused to answer appellant's interrogatories, appellant filed a motion to compel. In response, appellees filed a motion for a protective order. In their motion, appellees argued that they should not be compelled to answer appellant's interrogatories because appellant's discovery sought disclosure of financial information and data that (1) was not relevant to appellant's claims, (2) constituted trade secrets of appellees that should not be disclosed, and (3) had previously been determined by the trial court not to be discoverable.

On December 11, 1997, the trial court, without opinion or explanation, granted appellees' motion for a protective order and denied appellant's motion to compel.

Appellant then subpoenaed Medical Mutual of Ohio, its employee, Edward Hartzell, and appellees, requesting that Hartzell and appellees appear at trial on February 25, 1998, and produce records regarding the information requested in appellant's interrogatories.

Medical Mutual of Ohio moved to quash the subpoenas pursuant to Civ.R. 45(C), arguing that the subpoenas were untimely, having been served only two days before trial, that the document requests were unduly burdensome, that the information requested was confidential and proprietary trade secret information, and that the trial court had granted Medical Mutual's motion to quash a subpoena requesting the same documents and information in the earlier action.

Medical Mutual also requested sanctions against appellant's counsel, arguing that service of the subpoenas was frivolous conduct in violation of Civ.R. 11 because the trial court had repeatedly decided, both in appellant's first and second actions, that appellant was not entitled to the information it requested. At a hearing on February 25, 1998, the day of trial, the trial court granted Medical Mutual's motion to quash and awarded sanctions against appellant's counsel in the amount of $1,600, the amount of attorney fees Medical Mutual incurred in preparing its motion to quash.

As a result of the trial court's ruling, the parties entered seventeen stipulations into the record prior to commencing the trial. The parties stipulated to facts which were undisputed or to which appellant's witnesses would have testified. The parties also stipulated that appellant had served subpoenas on Medical Mutual and appellees requesting information about the profitability bonus, but that the court had refused to permit appellant to discover any information concerning the profitability bonus, would refuse to allow testimony regarding the profitability bonus to come in at trial, and would refuse to compel Medical Mutual and appellees to comply with the subpoenas. Consequently, the parties stipulated that "in light of Plaintiff's inability to prove damages, the Court directs a verdict for the Defendants at the conclusion of Plaintiff's case." The trial court entered judgment in favor of appellees, and appellees dismissed their counterclaim without prejudice.

Appellant timely appealed, assigning three assignments of error for our review:

"I. The trial court abused its discretion by directing a verdict in favor of each of the defendants.

"II. The trial court abused its discretion by refusing to allow discovery.

"III. The trial court abused its discretion by granting MMO's motion to quash and sanctioning Alpha's attorney."

In its second assignment of error, appellant argues that the trial court abused its discretion in denying its motion to compel and granting appellees' motion for a protective order. Specifically, appellant contends that by refusing to allow any discovery whatsoever concerning the bonuses, commissions, profitability bonus and the formula used to compute the profitability bonus, the trial court denied appellant the opportunity to quantify its damages—an essential element of both an action for breach of contract and an action for fraud. Moreover, appellant contends, the trial court's refusal to permit any discovery regarding this information prevented appellant from adequately defending appellees' counterclaim for lost profits.

Appellees, on the other hand, contend that the trial court did not abuse its discretion in granting appellees' motion for a protective order because the information sought by appellant was not relevant to appellant's claims, constituted confidential and proprietary trade secrets pursuant to R.C. 1333.61(D), and was not readily ascertainable. We do not agree.

The Rules of Civil Procedure provide liberal discovery provisions. Pursuant to Civ.R. 26(B)(1), the scope of discovery includes "any matter, not privileged, which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the party seeking discovery or to the claim or defense of any other party."

Notwithstanding the liberal discovery provisions contained in the Civil Rules, a trial court is vested with the authority to limit pretrial discovery in order to prevent an abuse of the discovery process. *Arnold v. Am. Natl. Red Cross* (1994), 93 Ohio App.3d 564, 575, 639 N.E.2d 484, 491. Thus, Civ.R. 26(C) provides, that "for good cause shown, the court * * * may make any order that justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including * * * (7) that a trade secret or other confidential research, development, or commercial information not be disclosed or be disclosed only in a designated way * * *." The decision to grant a motion for a protective order is left to the discretion of the trial court. Absent an abuse of discretion, an appellate court must affirm a trial court's disposition of discovery issues. *State ex rel. The V Cos. v. Marshall* (1998), 81 Ohio St.3d 467, 469, 692 N.E.2d 198, 200–201.

Here, it is apparent that the trial court abused its discretion in granting appellees' motion for a protective order *in toto*. First, we note that interrogatories seventeen through twenty-one sought information about the defenses raised by appellees in their answer to appellant's complaint, interrogatories twenty-two through twenty-four requested information regarding the names and addresses of possible witnesses, and interrogatories twenty-five and twenty-six requested

information regarding the location of documents. Clearly, the information requested in these interrogatories is relevant to appellant's claims, is not proprietary or confidential information, and is readily ascertainable by appellees. Accordingly, the trial court erred in not ordering appellees to respond forthwith to these interrogatories.

■ Moreover, with respect to appellees' contention that the information requested by appellant is not readily available, we note that nowhere in their motion for a protective order do appellees assert that production of the requested information would be unduly burdensome. Although the affidavit of Patrick Kelly submitted by Medical Mutual in support of its motion to quash indicates that it would take Medical Mutual an inordinate amount of time to procure the requested information, nowhere in appellees' motion do appellees contend that they do not · have the requested information or could not easily obtain it. Accordingly, we find this argument to be without merit.

■ Furthermore, we do not agree that the profitability information requested by appellant in interrogatories two through sixteen is not relevant to appellant's claims. Appellant claims that appellees breached their promise to pay appellant its proportionate share of the profitability bonus received by appellees from Blue Cross and Blue Shield. Appellees claim that appellant's negligent and fraudulent misrepresentations caused them to lose, *inter alia,* profits. Thus, the issue of profitability is not incidental to this case; it is essential.

■ As noted earlier, Civ.R. 26(B)(1) grants broad discovery powers to parties. Although the rule limits the matter to be discovered to that which is "relevant to the subject matter," Civ.R. 26(B)(1) also provides for discovery of information "reasonably calculated to lead to the discovery of admissible evidence." The test for relevancy under Civ.R. 26(B)(1) " 'is much broader than the test to be utilized at trial. [Evidence] is only irrelevant by the discovery test when the information sought will not reasonably lead to the discovery of admissible evidence.' " *Tschantz v. Ferguson* (1994), 97 Ohio App.3d 693, 715, 647 N.E.2d 507, 521, quoting *Icenhower v. Icenhower* (Aug. 14, 1975), Franklin App. No. 75AP–93, unreported, at 2. Under this broad discovery test, appellant's interrogatories—which seek information regarding an essential issue in the case—are clearly relevant both to appellant's claims and to its defense against appellees' counterclaim.

Appellees assert, however, that the financial information requested by appellant constitutes confidential, proprietary information and trade secrets of appellees that should not be disclosed to appellant. R.C. 1333.61(D) defines "trade secrets" to include:

"[A]ny business information or plans, financial information, or listing of names, addresses, or telephone numbers, that satisfies both of the following:

"(1) It derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use.

"(2) It is the subject of efforts that are reasonable under the circumstances to maintain its secrecy."

■ The following factors are to be "considered by a trial court in recognizing a trade secret * * * (1) the extent to which the information is known outside the business, (2) the extent to which it is known to those inside the business, *i.e.*, by the employees, (3) the precautions taken by the holder of the trade secret to guard the secrecy of the information, (4) the savings effected and the value to the holder in having the information as against competitors, (5) the amount of effort or money expended in obtaining and developing the information, and (6) the amount of time and expense it would take for others to acquire and duplicate the information." *Pyromatics, Inc. v. Petruziello* (1983), 7 Ohio App.3d 131, 7 OBR 165, 454 N.E.2d 588, paragraph two of the syllabus.

■ There is no indication in the record that the trial court considered these factors before granting appellees' motion for a protective order. Even assuming that the information sought by appellant is trade secrets, however, the trial court abused its discretion in granting appellees' motion in its entirety, rather than fashioning an appropriate protective order that would allow appellant to make its case and defend against appellees' counterclaim while still protecting appellees' trade secrets.

■ "In determining whether to grant a protective order, a trial court must balance the competing interests to be served by allowing discovery to proceed against the harm which may result." *Arnold v. Am. Natl. Red Cross* (1994), 93 Ohio App.3d 564, 576, 639 N.E.2d 484, 491–492, citing *Doe v. Univ. of Cincinnati* (1988), 42 Ohio App.3d 227, 231, 538 N.E.2d 419, 423–424. In this case, therefore, we balance appellant's need for the information with the potential harm to appellees resulting from disclosure of their trade secrets.

■ Here, it is readily apparent that the information appellant is seeking from appellees is indispensable to both proof of appellant's claims for relief and its defense to appellees' counterclaim. Indeed, as proved by the trial court's subsequent directed verdict in favor of appellees, appellant's inability to obtain the information from appellees denies it the opportunity to quantify its damages—an essential element of both a *prima facie* claim of breach of contract and a claim of fraud. Moreover, the information sought by appellant is within

appellees' exclusive knowledge and control. Therefore, we conclude that the potential harm to appellees by disclosing the information is outweighed by appellant's need for the information.

We are not unmindful of appellees' contention that disclosure of the information sought by appellant to competing insurance agencies such as appellant would cause serious harm to King Agency. Appellees, however, cannot first allege that they suffered lost profits and then refuse to disclose their profitability information to appellant by claiming that it is a trade secret.

■ Moreover, a trial court has broad authority to fashion a protective order that protects the secrecy of a trade secret. R.C. 1333.65 provides that a court may preserve the secrecy of an alleged trade secret by reasonable means, including holding in-camera hearings, sealing the records of the action and ordering any person involved in the litigation not to disclose an alleged trade secret. Civ.R. 26(C) provides that a court may order that discovery be had "on terms and conditions as are just." Thus, pursuant to the court's authority to regulate discovery, the court may, for example, order that use of the discovered information be limited to the lawsuit, limit the persons who have access to the information, limit or prohibit the reproduction of documents, require a bond to protect against the risk of injury from the disclosure of the trade secrets, and designate who shall serve as custodian of the records. Here, however, the trial court apparently ignored appellant's request that pursuant to Civ.R. 26(C), the trial court grant appellees' motion to the extent necessary to protect appellees' trade secrets while releasing the information to appellant.

■ "The purpose of the discovery rules * * * is to prevent surprise to either party at the trial or to avoid hampering either party in preparing its claim or defense for trial." *Jones v. Murphy* (1984), 12 Ohio St.3d 84, 87, 12 OBR 73, 76, 465 N.E.2d 444, 447 (Brown, J., dissenting). The policy underlying the discovery rules, Civ.R. 26 through Civ.R. 37, is stated in Civ.R. 26(A):

*"It is the policy of these rules (1) to preserve the right of attorneys to prepare cases for trial with that degree of privacy necessary to encourage them to prepare their cases thoroughly and to investigate not only the favorable but the unfavorable aspects of such cases and (2) to prevent an attorney from taking undue advantage of his adversary's industry or efforts."* (Emphasis added.)

In addition, the Civil Rules "shall be construed and applied to effect just results by eliminating delay, unnecessary expense and all other impediments to the expeditious administration of justice." Civ.R. 1(B). By ignoring Civ.R. 26(C), and refusing to craft an appropriate protective order that adequately protected the interests of all parties to the litigation, the trial court both

eliminated appellant's ability to prepare its case for trial and failed to effect a just result in this case.

Appellant's second assignment of error is, therefore, sustained.

In its first assignment of error, appellant argues that the trial court erred in granting a directed verdict in favor of appellees on the basis of appellant's inability to prove damages. Specifically, appellant contends it was unable to quantify its damages for the jury because the trial court erroneously denied it access to any profitability information from appellees either in discovery or at trial.

 Initially, we address appellees' contention that appellant stipulated to a directed verdict in favor of appellees and, therefore, cannot now challenge the directed verdict that it agreed to in the trial court. Appellees argue that this case is like *Faber v. Queen City Terminals, Inc.* (1994), 93 Ohio App.3d 197, 638 N.E.2d 115, in which the defendant moved for a Civ.R. 41(B)(2) dismissal of plaintiff's claims, but then proposed a "conditional" dismissal to the trial court, which the trial court approved. When the defendant subsequently attempted to appeal the conditional dismissal, the First District Court of Appeals found that the defendant was precluded from complaining about the alleged error on appeal because a party in litigation may not intentionally or unintentionally induce or mislead a court into the commission of an error and then seek reversal on those grounds. *Id.* at 203, 638 N.E.2d 115.

We find appellees' argument unpersuasive. This case is not like *Faber.* Here, appellant did not stipulate that the trial court *should* enter judgment for appellees. Rather, it simply stipulated to what it was obvious the trial court was going to do: direct a verdict in favor of appellees. Accordingly, appellant did not invite the error from the trial court and, therefore, is not foreclosed from appealing the trial court's decision.

Civ.R. 50(A)(4) governs the granting of a motion for a directed verdict on the evidence. It provides:

"When a motion for a directed verdict has been properly made, and the trial court, after construing the evidence most strongly in favor of the party against whom the motion is directed, finds that upon any determinative issue reasonable minds could come to but one conclusion upon the evidence submitted and that conclusion is adverse to such party, the court shall sustain the motion and direct a verdict for the moving party on that issue."

 The trial court " 'must neither consider the weight of the evidence nor the credibility of the witnesses in disposing of a directed verdict motion.' " *Wagner v. Roche Laboratories* (1996), 77 Ohio St.3d 116, 119, 671 N.E.2d 252,

255, quoting *Strother v. Hutchinson* (1981), 67 Ohio St.2d 282, 284, 21 O.O.3d 177, 179, 423 N.E.2d 467, 469. Rather, "the court is confronted solely with a question of law: Was there sufficient material evidence presented at trial on this issue to create a factual question for the jury?" *Malone v. Courtyard by Marriott L.P.* (1996), 74 Ohio St.3d 440, 445, 659 N.E.2d 1242, 1247. Here, appellant admittedly failed to present sufficient material evidence to prove the damages element of its breach of contract and fraud claims. Accordingly, the trial court directed a verdict in favor of appellees.

▬ Appellant was precluded from presenting any evidence of damages to the jury, however, because of the trial court's erroneous ruling denying appellant access to any financial information from appellees during discovery. Moreover, as indicated in Stipulation 15 of the parties' stipulations,[1] the trial court also informed the parties prior to trial that it would refuse to allow any testimony from appellees or Medical Mutual regarding the profitability bonus at trial. In short, the trial court would not allow appellant to discover any information regarding its damages nor prove its damages at trial.

Appellees argue, however, that the trial court's directed verdict in favor of appellees was proper because appellant failed to prove the damages element of its breach-of-contract claim and did not prove *any* of the elements of its fraud claim. We do not find this argument persuasive.

With respect to its breach-of-contract claim, appellant was precluded from quantifying its damages by the trial court's erroneous discovery decision denying appellant any discovery whatsoever from appellees. Moreover, appellant was denied the opportunity to present any evidence regarding its fraud claim because the trial court improperly granted a directed verdict in favor of appellees due to appellant's inability to prove its damages.

Because appellant's inability to quantify its damages was a direct result of the trial court's error excluding any profitability information from discovery or trial, we find that the trial court erred when it directed a verdict in favor of appellees on the basis of appellant's inability to prove its damages.

Appellant's first assignment of error is sustained.

▬ In its third assignment of error, appellant contends that the trial court abused its discretion by granting Medical Mutual's motion to quash the subpoenas appellant served on it prior to trial and sanctioning appellant's counsel for

---

1. Stipulation 15 states: "The Court has refused to permit Plaintiff to discover information concerning the profitability bonus from Defendants and Blue Cross and Blue Shield and refuses to permit testimony to come in from Defendants and Blue Cross and Blue Shield concerning the profitability bonus and will refuse to make Defendants and Blue Cross and Blue Shield comply with the subpoenas."

serving the subpoenas. Specifically, appellant contends that the trial court erred in quashing the subpoenas because it had foreclosed every other avenue for appellant to obtain the information it needed from appellees to prepare for trial and, thus, issuing subpoenas to Medical Mutual was the only other avenue available to appellant. Appellant also contends that the trial court erred in sanctioning appellant's counsel because he did not willfully violate Civ.R. 11.

Appellees contend that the trial court properly granted Medical Mutual's motion to quash the subpoenas because the information was confidential and proprietary and the subpoenas subjected Medical Mutual to undue burden and expense. Appellees make no argument regarding the proprietary of the trial court's award of sanctions against appellant's counsel.

We find no error in the trial court's decision to quash the subpoenas. First, the subpoenas were served only two days before trial. Moreover, the record reflects that although the case had been pending since January 22, 1997, appellant had made no effort to procure the documents from Medical Mutual or Edward Hartzell at any earlier time. In addition, the document production required by the subpoenas subjected Medical Mutual to an undue burden. The February 12, 1996 affidavit of Patrick Kelly, Medical Mutual's Manager of National Accounts, attached to Medical Mutual's motion for a protective order in the first action, explained that it would take a full-time employee at least one to two months to compile even a portion of the requested documentation. Thus, appellant was on notice that compiling the documents would require an extensive amount of time, yet did nothing until two days prior to trial to attempt to obtain the documents. Civ.R. 45(C)(3)(a) provides that a court must quash or modify a subpoena if it does not allow reasonable time for compliance. Accordingly, we find no abuse of discretion in the trial court's decision to quash appellant's subpoenas to Medical Mutual.

The trial court erred, however, in sanctioning appellant's counsel for issuing the subpoenas. Before a court may award sanctions under Civ.R. 11, it must make the following three-step determination:

"First, the court must consider whether the attorney signing the document (1) has read the pleading, (2) harbors good grounds to support it to the best of his or her knowledge, information, and belief, and (3) did not file it for purposes of delay. If any one of these requirements is not satisfied, the next question is whether the violation was 'willful' as opposed to merely negligent. If so, the court may impose an 'appropriate action.'" *Ceol v. Zion Indus., Inc.* (1992), 81 Ohio App.3d 286, 290, 610 N.E.2d 1076, 1078.

There is nothing in the record to indicate that the trial court considered these factors before sanctioning appellant's counsel. Our review, however, indicates that appellant's counsel read and understood the subpoenas, harbored good grounds for their issuance, and did not serve them for the purpose of delay.

Attorneys have an ethical, moral, and legal responsibility to represent their clients zealously within the bounds of the law. See, *e.g.*, Canon 7 of the Ohio Code of Professional Responsibility; EC 7–1; DR 7–101. Here, by serving trial subpoenas on Medical Mutual, appellant's counsel was making one last effort to obtain the information that he desperately needed to present his client's claims to the jury and defend against appellees' counterclaim. The fact that the trial court had made a preliminary discovery ruling earlier in the case denying discovery from appellees did not mean that appellant's counsel should not zealously pursue his client's right to obtain the information from the only other source that was privy to the information. Moreover, the fact that the trial court had granted Medical Mutual's motion for a protective order in the first action did not preclude subpoenaing Medical Mutual in this action, where appellees' counterclaim for lost profits had substantially changed the tenor of the action. Accordingly, appellant's counsel did not violate Civ.R. 11 by serving trial subpoenas on Medical Mutual and Edward Hartzell.

Appellant's third assignment of error is, therefore, overruled in part and sustained in part.

The judgment of the trial court is reversed, and the cause is remanded for further proceedings consistent with the opinion herein.

*Judgment reversed*
*and cause remanded.*

DYKE, P.J., and KILBANE, J., concur.