**SPLATER et al., Appellants,**

v.

**THERMAL EASE HYDRONIC SYSTEMS, INC.,
et al., Defendants; Noveon, Inc., Appellee.**

[Cite as *Splater v. Thermal Ease Hydronic Sys.,
Inc.,* 169 Ohio App.3d 514, 2006-Ohio-5452.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 87508.

Decided Oct. 19, 2006.

Cohen Rosenthal & Kramer, L.L.P., Ellen M. Kramer, and Joshua R. Cohen; Tousley Brain Stephens, P.L.L.C., Christopher I. Brain, Beth E. Terrell, Toby J.

Marshall, and Michael J. Estok; Christopher R. Casey, P.L.L.C., and Christopher R. Casey; Lieff, Cabraser, Heimann & Bernstein, Kristen E. Law, and Jonathan D. Selbin; and Law Office of William Willard and William T. Willard, for appellants.

Miller Nash L.L.P., Daniel A. Brown, and Christine M. Masse; Larkin Hoffman Daly & Lindgren, Ltd., Terrence E. Bishop, and Nicholas Lewandowski, for defendants.

Cecil Marlowe, for appellee.

MICHAEL J. CORRIGAN, Judge.

{¶ 1} The issue in this appeal is whether the court abused its discretion by denying plaintiff Durand Splater's motion to compel the production of certain trade secrets held by nonparty Noveon, Inc. Splater sought by subpoena Noveon's formulae for certain antioxidants used by manufacturers of polyethylene ("PEX") tubing. Noveon resisted the subpoena on the grounds that its formulae were trade secrets. In rejecting Splater's guarantee of confidentiality, Noveon pointed out that one of the named defendants in Splater's action was a direct competitor, who, as a party to the action, would have been entitled to this information. Noveon also questioned Splater's need for the formulae. The court held that Noveon's formulae were trade secrets, the disclosure of which would irreparably harm Noveon. The court thus found that Noveon's interests in maintaining the confidentiality of its trade secrets outweighed Splater's need for the material. Splater's sole assignment of error contests this ruling.

I

{¶ 2} The underlying action is a products-liability lawsuit filed by Splater in the King County Superior Court for the state of Washington. It is styled *Splater v. Thermal Ease Hydronic Sys., Inc.*, King Cty. Sup.Ct. No. 03–2–33553–3 SEA. The product at issue is a cross-linked polyethylene tubing manufactured after January 1, 1995, and marketed under a variety of names, including "UltraPex." The complaint alleged that a company named Plasco Manufacturing Ltd., now known as Uponor Canada, Inc., manufactured and sold UltraPex for sale by private-label vendors. Noveon claims that Uponor is a direct competitor in the business of formulating and manufacturing PEX tubing.

{¶ 3} PEX is a resin-based tubing used for hydronic heating and plumbing applications—known in the building trade as radiant heating. The PEX tubing is laid beneath flooring and inside walls. Hot water is pumped through the tubing, with the resulting heat generated by the hot water radiating through the surface and warming the area.

{¶ 4} The parties agree that PEX is unstable in heated waters because of oxidation caused by oxygen and chlorine—two components of most water supplies—that comes into contact with PEX and breaks down the molecular structure of the material, causing brittleness. To resist oxidation, PEX manufacturers use stabilizing agents known as antioxidants. The stabilizers are designed to degrade over time, and the usable life of PEX is directly related to the decay rate of the stabilizers used in the product.

{¶ 5} Splater alleged that millions of feet of UltraPex tubing are defective and substantially certain to fail because the stabilizers used in PEX are insufficient or are leaching out of the PEX. To prove this conclusion, Splater wanted the chemical composition of the stabilizers used in PEX manufacturing. He intended to use the formulae to replicate existing PEX and determine whether the PEX showed an accelerated depletion rate. Splater therefore subpoenaed Noveon to produce the chemical formulae for Flexet 5100 (a cross-linkable copolymer) and Flexet 725 (a catalyst master batch).

II

{¶ 6} Civ.R. 26(B)(1) states as follows:

{¶ 7} "Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the party seeking discovery or to the claim or defense of any other party, including the existence, description, nature, custody, condition and location of any books, documents, or other tangible things and the identity and location of persons having knowledge of any discoverable matter. It is not ground for objection that the information sought will be inadmissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence."

{¶ 8} Civ.R. 34(C) states that a person not a party to the action may be compelled to produce "documents or tangible things" upon the issuance of a subpoena as provided in Civ.R. 45. A person to whom a subpoena has been issued for discovery may have the subpoena quashed on the grounds that it requires the disclosure of privileged or other protected matter. See Civ.R. 45(C)(3)(b). For good cause shown, the court may "make any order that justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including * * * that a trade secret * * * not be disclosed or be disclosed only in a designated way." See Civ.R. 26(C)(7). As with all other matters relating to discovery, this admittedly broad rule nonetheless gives way to the court's discretion to manage discovery. *State ex rel. Daggett v. Gessaman* (1973), 34 Ohio St.2d 55, 57, 63 O.O.2d 88, 295 N.E.2d 659.

{¶ 9} A "trade secret" is defined by R.C. 1333.61(D) as information that derives independent economic value from not being generally known to persons who can obtain economic value from its disclosure or use and that is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

{¶ 10} There is no question that the formulae for Flexet 5100 and 725 are trade secrets. A Noveon representative submitted an affidavit averring that Noveon purchased Flexet in December 2001 from AT Plastics, Inc., and then invested significant amounts in the Flexet product line. Noveon carefully safeguarded the formulae as trade secrets and required all of its employees to sign confidentiality agreements as a condition of employment. Even Splater's expert conceded that formulations are highly proprietary in the field.

{¶ 11} The rules require the court to balance the need to preserve a trade secret with a party's right to discover material that is relevant and reasonably necessary. *Martin v. Budd Co.* (1998), 128 Ohio App.3d 115, 119, 713 N.E.2d 1128, quoting *McMillan v. Ohio Civ. Rights Comm.* (1974), 39 Ohio Misc. 83, 94, 68 O.O.2d 260, 315 N.E.2d 508. As appropriate, the court may fashion a protective order that limits who may have access to the discovered evidence. *Alpha Benefits Agency, Inc. v. King Ins. Agency, Inc.* (1999), 134 Ohio App.3d 673, 683, 731 N.E.2d 1209; *Majestic Steel Serv., Inc. v. DiSabato* (Dec. 16, 1999), Cuyahoga App. No. 76521, 1999 WL 1206573. The court must balance the competing interests to be served by allowing discovery to proceed against the harm that may result from disclosure of trade secrets. *Arnold v. Am. Natl. Red Cross* (1994), 93 Ohio App.3d 564, 576, 639 N.E.2d 484.

## III

{¶ 12} We conclude that the court did not abuse its discretion by denying Splater's motion to compel the production of Noveon's trade secrets, because the evidence would have permitted the court to conclude that Splater failed to demonstrate a need for the formulae that overcame the potential harm that could result to Noveon as a result of disclosure.

{¶ 13} Splater's expert stated his opinion that PEX tubing manufactured using Noveon's master batch catalyst was "defective, failing, and substantially certain to rupture because of the unsuitability of the resin material for the application to which Defendants produced, marketed, and warranted the product." Noveon disputed this conclusion, offering several alternative possibilities for failure. Through it all, however, Splater's expert insisted that the antioxidant package used in PEX manufacture was insufficient and that he believed to a reasonable degree of engineering certainty that the PEX would fail.

{¶ 14} Noveon points out that the expert had previously testified in seven other cases relating to PEX tubing that failure had occurred or was substantially certain to occur. Despite holding the opinion that the PEX would fail, the expert conceded that he could not determine why it was failing. He maintained that he needed access to Noveon's formulae "in order to get into the generalization of why this material is not behaving correctly." Time and again, the expert said that this information would be "helpful" in assisting him to confirm his conclusions.

{¶ 15} The problem with the expert's testimony is that it fails to establish a need for the formulae sufficient to trump Noveon's interest in protecting its trade secrets. Given that one of the defendants in the *Splater* litigation is a direct competitor of Noveon's, Splater's assertion that knowledge of Noveon's trade secrets would be "helpful" falls far short of establishing the kind of need necessary to warrant dissemination of Noveon's trade secrets. The expert's desire to delve into the "generalization" of the PEX failure suggests something far short of a compelling need for the formulae.

{¶ 16} Our conclusion is supported by Noveon's contentions that there were other possible causes of failure that had not been eliminated. Noveon's expert suggested a number of possible causes for the PEX failure, including, for example, improper UV exposure or incorrect mixing of the stabilizer master batch. We believe that the court could rationally conclude that until these other possible faults have been tested and eliminated, there is no reason to expose Noveon to the risk that its trade secrets could be disseminated to a competitor. In short, Splater has failed to present the kind of need that is so compelling as to warrant the risk that Noveon's trade secrets could be disseminated to a direct competitor.

Judgment affirmed.

Rocco, J., concurs.

Dyke, A.J., concurs in judgment only.