DECISION AND JUDGMENT ENTRY
This case is before the court as a consolidated appeal from a judgment of the Ottawa County Court of Common Pleas, wherein, after a trial to the bench, the lower court entered judgment in favor of appellee/cross-appellant, Spinnaker Bay Condominium Association ("Association"). This cause arises from the following relevant facts.
In August 1995, plaintiffs-appellants/cross-appellees, Brian Junkins and Debra Junkins purchased a unit ("Unit 117") in Spinnaker Bay Yacht 
Beach Club Resort Condominium ("Spinnaker Bay"). Spinnaker Bay is located along the shore of Lake Erie in Port Clinton, Ottawa County, Ohio. It was developed by Spinnaker Bay Partners. All units in Spinnaker Bay were designed with attached open air decks at the ground level. The decks are denominated "limited common areas" in the Declaration and By-Laws of Spinnaker Bay ("Declaration"). The first twelve units constructed in Spinnaker Bay were on the lakefront.
In 1994, plaintiff-appellant/cross-appellee, Jamestown Drive, Inc. ("Jamestown"), negotiated with Spinnaker Bay Partners for the pre-construction purchase of a unit ("Unit 125") in Spinnaker Bay. As part the purchase negotiations, Jamestown requested, among other things, an upper level deck in addition to the ground level deck. This request was denied, and at the time of the closing in October 1995, Unit 125 was indistinguishable from the other units in Spinnaker Bay. Scott Keils, owner and President of Jamestown, resides in Unit 125.
On September 1, 1995, a letter was sent to the Association's Board of Trustees ("Board"). The letter reads:
 "We, the owners of the front 12 units [the lakefront units], request your review and approval of the following optional improvement.
 "The ground level units to install on the deck Four Seasons Series 230 White Sunrooms (picture attached) with a shed roof. If another manufacturer is used, it must match the existing units as close as possible.
 "Each owners new room exterior will be maintained by that owner. Failure to maintain this area will be done by the Association and an assessment plus fine charged to the unit owner."
The letter was purportedly signed by all twelve front unit owners. However, Scott Kiels did not personally sign the document; he provided "his neighbor" with verbal authorization to sign his name. Moreover, Kiels' name is listed only in his individual capacity, not as an agent for Jamestown, the actual owner of Unit 125. Furthermore, testimony at the trial on this cause revealed that a majority of the twelve units were still owned by Spinnaker Bay Partners, that is, the buyers, including Jamestown, had not closed on the property as of the date of the letter.
The letter includes a sketch of a glass-sided, aluminum-framed enclosure with a flat sloping roof that is constructed on the existing deck. An accompanying page from a brochure depicts the "Series 230 Patio Sunroom" as a glass-sided, aluminum-framed enclosure with either a "Cathedral roof or lean-to design." The letter was sent, by certified mail, to Morgan Mitchell Development Corporation, the builder of the units in Spinnaker Bay and a partner in Spinnaker Bay Partners. At that time, Mark Mitchell, the Vice-President of Morgan Mitchell Development Corporation, was the statutory agent for the Association and was also on the Board. According to Mark Mitchell, he verbally told one of the signatories of the September 1995 letter, that the unit owners could not enclose their decks.
In the spring of 1996, Scott Keils enclosed the ground level deck of Unit 125 and constructed an upper level deck, with a hot tub, on top of that enclosure. Keils built the enclosure on site using "treated structural posts; three-quarter inch plywood sheeting, two by ten; structural floor joists treated railings; treated lumber," as well as vinyl siding, vinyl windows and glass sliding doors. The interior of the room is dry-walled and is heated and air-conditioned. Keils testified that it is used as a "TV room, sitting area." He admitted that the room is incorporated into Unit 125's living space, adding over one hundred eighty square feet to the living area.
On April 16, 1996, the Association sent a letter to Scott Keils notifying him that the modifications to the deck of Unit 125 violated the Declaration. The Association subsequently commenced a suit against Jamestown, but voluntarily dismissed that action, without prejudice, in 1997.
The Junkins started to enclose the deck attached to Unit 117 in February 1998. On February 8, 1998, Brian Junkins received a letter from the Association. The letter stated that the construction of the addition to Unit 117 violated the Declaration. It ordered the cessation of construction and requested that the deck be returned to its former state.
The Junkins, however, continued with the construction of the sunroom. They patterned the addition according to the room added to Unit 125. The room has a conventional wood frame, was built on site, with a finished interior, including wallpaper, and has sliding glass doors. The addition is heated and air-conditioned through the heating system of the original unit. The room is usable throughout the year, and like Unit 125, contains over one hundred eighty square feet of living area.
On September 22, 1998, Brian and Debra Junkins commenced the instant action asking the common pleas court to declare that, in erecting the addition to Unit 117, they complied with the Association's Declaration. The Association filed an answer and six counterclaims, all of which rested on the Junkins's alleged violations of various provisions of the Declaration. The Association prayed for a declaratory judgment in its favor and a permanent injunction.
In January 1999, the Association filed suit against Jamestown. Like the counterclaims leveled against Brian and Debra Junkins, this suit requests a declaratory judgment finding that Jamestown violated certain provisions of the Declaration by constructing an addition and upper level deck on its lower level deck and for a permanent injunction ordering restoration of the deck to its original condition. The trial court later consolidated the two cases. Furthermore, prior to trial, Brian and Debra Junkins sold Unit 117 to Constance J. McDougal, who was later joined as a new party plaintiff.
In the meantime, the Junkins filed a motion for summary judgment asserting that under Article XX, Section 2 of the Declaration, their dispute with the Association was subject to arbitration. According to the plaintiffs, they sought arbitration prior to instituting their action for a declaratory judgment. The letters attached to the motion for summary judgment indicate that the Association rejected the claim that Article XX, Section 2 was applicable in the instant case.
In the alternative, the Junkins argued that they were entitled to summary judgment because no genuine issue of material fact existed on the question of whether they received "implied approval" of their written request to erect a sunroom on their deck. The Junkins relied on Article III, Section 2(O), of the Declaration, which provides:
 "No building, fence, wall, sign, or other structure shall be commenced, erected, or maintained upon the Condominium Property, or any part thereof, nor shall any exterior addition to or change or alteration therein be made, until the plans and specifications showing the nature, kind, shape, height, materials, color, and location of the same shall have been submitted to and approved in writing by the Board or its designated representative, as to harmony of external design, color, and location in relation to surrounding structures and topography. In the event the Board, or its designated representative, fails to approve or disapprove such plans and specifications within sixty(60) days after they have been submitted to it, approval will not be required and these provisions will be deemed to have been fully complied with."
According to the Junkins, their plan for a sunroom was "approved" when the Board or its designated representative failed to respond, in writing, within sixty days to their letter dated September 1, 1995. In her supplemental motion for summary judgment, Constance McDougal also claimed that she was entitled to summary judgment because no genuine issue of material fact existed as to whether the Association's counterclaims were barred by the affirmative defenses of laches and equitable estoppel.
In its motion for summary judgment, the Association asserted that the Junkins (1) waived their right to arbitration by filing suit; and (2) the property issues in this cause were not arbitrable. Additionally, the Association contended that (1) the letter sent to the builder of the condominiums did not constitute "plans and specifications" within the meaning of Article III, Section 2(O).
The Association further argued that, assuming that implied approval existed, the actual addition, as constructed, did not conform to the structure proposed in the letter. The Association contended that, even if Board approval was implied, the enclosure of the deck violated R.C.5311.04(D)and Article XVIII, Section 1 of the Declaration. Both the statute and Article XVIII set forth circumstances which require amendment to the Declaration through the approval of all unit owners. The Association maintained that because these provisions applied to this cause, the Board lacked the authority to provide approval, actual or implied, for the construction of the sunroom.
On August 25, 2000, the trial court granted partial summary judgment to Brian and Debra Junkins and partial summary judgment to the Association. The court first determined that the couple waived their right to arbitration by filing the declaratory judgment action. The court then decided that neither R.C. 5311.04(D) nor Article XVIII, Section 1(a) were relevant to approval of the construction of the sunroom.
The court found that the Association "defaulted in discharging its duties under Article III, Section 2(O)" by failing to respond in a timely manner to the February 1, 1995 letter thereby implicitly approving the proposed sunroom. Nevertheless, the court also concluded that genuine issues of material fact existed on the question of whether the sunroom, as constructed, comported with the February 1995 proposal. Finally, the court decided that the defenses of laches or equitable estoppel were not applicable to bar the Association's counterclaims. The court concluded: "For clarifications and future proceedings, it is FURTHER ORDERED that unless new evidence shows otherwise, the sole issue remaining to be tried is whether the current Sunroom on the Junkins' deck substantially complies with the proposal submitted by the Junkins to the Board of trustees on September 1, 1995."
Prior to the trial of this cause, the court personally viewed both the addition to Unit 117 and to Unit 125. During the ensuing consolidated trial, evidence was offered and arguments were made on all issues raised by the parties in both the Junkins and Jamestown cases. The Association's expert, Doug Raus, who has been in the business of erecting Four Seasons Sunrooms for twenty years, testified that the Series 230 is constructed of glass and is all aluminum with Styrofoam wedged between the aluminum on the roof. He further stated that the Series 230 is: "* * * bought as a unit and installed as a unit. It is finished inside and out when it is erected. It is completely done other than putting carpet in it." In other words, it is not constructed on site. Raus conceded that the Series 230 and the sunrooms built by the Junkins and Jamestown look similar, but also noted numerous structural differences between them.
At the conclusion of the trial, the trial court ordered the parties to submit written closing arguments in the form of proposed Findings of Fact and Conclusions of Law. On January 29, 2001, the common pleas court entered judgment in favor of the Association. In doing so, the court adopted the Association's Findings of Fact and Conclusions of Law as its own, specifically stating that its August 25, 2000 partial grant of summary judgment was interlocutory and subject to change. The judge ordered that the August 25, 2000 judgment be conformed to the adopted "Findings and Conclusions." The Findings of Fact and Conclusions of Law submitted by the Association addressed all issues before the trial court on summary judgment rather than focusing solely on whether the sunrooms, as built, "substantially complied" with a "Four Seasons Series 230 White Sunroom."
The court below ordered the Junkins, Constance McDougal and Jamestown to immediately remove their additions and enjoined them from proceeding with any construction, alterations or additions to their condominium units unless they complied with Article III, Section 2(O) and "the requirements of Article XVIII, Section 1, as may be applicable."
 THE JUNKINS-MCDOUGAL APPEAL
Brian and Debra Junkins and Constance McDougal ("appellants") assert the following assignments of error:
 "I. THE TRIAL COURT ERRED AS A MATTER OF LAW IN CONCLUDING THAT THE JUNKINS DID NOT RECEIVE SUFFICIENT APPROVAL TO MAKE AN ARCHITECTURAL IMPROVEMENT TO UNIT 117.
 "II. THE TRIAL COURT COMMITTED PREJUDICIAL ERROR BY CONSIDERING EVIDENCE AT TRIAL SUBMITTED BY DEFENDANT-APPELLEE ADDRESSING THE APPROVAL OF JUNKINS SEPTEMBER 1, 1995 PROPOSAL WHEN THE TRIAL COURT EXPLICITLY STATED THAT THE TRIAL PROCEEDING WAS LIMITED TO THE ISSUE OF SUBSTANTIAL SIMILARITY.
 "III. THE TRIAL COURT ERRED IN RULING THAT THE JUNKINS SUN ROOM WAS NOT SUBSTANTIALLY SIMILAR TO THEIR SEPTEMBER 1995 PROPOSAL.
 "IV. "THE TRIAL COURT ERRED IN CONCLUDING THAT THE DOCTRINE OF LACHES DID NOT ATTACH TO BAR DEFENDANT-APPELLEE'S ATTEMPT TO ENJOIN THE JUNKINS FROM FURTHER USE AND ENJOYMENT OF THEIR SUN ROOM.
 "V. THE TRIAL COURT ERRED WHEN IT FAILED TO DETERMINE THAT THE DEFENDANT-APPELLEE WAS EQUITABLY ESTOPPED FROM SEEKING AN INJUNCTION AGAINST PLAINTIFFS-APPELLANTS.
 "VI. THE TRIAL COURT ERRED IN CONCLUDING THAT THE CONDOMINIUM ASSOCIATION DECLARATION DID NOT REQUIRE THE WITHIN DISPUTE BETWEEN THE PARTIES TO THIS APPEAL TO BE SUBMITTED TO ARBITRATION.
Because our disposition of appellants' Assignments of Error Nos. IV, V, and VI may affect our consideration of the remaining assignments of error, we shall determine those assignments first.
In Assignment of Error No. VI, appellants contend that the trial court erred in failing to submit, as required by the Declaration, this dispute to arbitration.
Article XX, Section 2 of the Declaration mandates that any dispute, other than assessments, between a Unit Owner and the Association "shall first be submitted to arbitration in accordance with and pursuant to the arbitration law of Ohio then in effect (presently Chapter 2711 of the Revised Code of Ohio) by a single independent arbitrator selected by the Board." However, as determined by the trial court, the right to arbitrate pursuant to R.C. Chapter 2711 can be waived.
Ohio public policy favors the enforcement of private arbitration agreements. Kelm v. Kelm (1993), 68 Ohio St.3d 26, 27. Nevertheless, when a party does not properly raise the arbitration provision of a contract before the trial court, he is deemed to have waived arbitration. Austin v. Squire (1997), 118 Ohio App.3d 35, 37; Mills V.Jaguar-Cleveland Motors, Inc. (1980), 69 Ohio App.2d 111. In determining whether a party has waived the right to arbitrate, "the essential question is whether, based on the totality of the circumstances, the party seeking arbitration has acted inconsistently with the right to arbitrate." Harsco Corp. v. Crane Carrier Co. (1997), 122 Ohio App.3d 406,413-414.
Our standard of review is abuse of discretion. Id. at 410; FarrowBuilders, Inc. v. Slodov (June 29, 2001), Geauga App. No. 2000-G-2288. An abuse of discretion connotes more than mere error of law or judgment; rather, it implies that the trial court's attitude was unreasonable, arbitrary, or unconscionable. Blakemore v. Blakemore (1983),5 Ohio St.3d 217, 219.
In the case before us, the record demonstrates that appellants knew that they had a right to arbitrate pursuant to the Declaration and R.C. Chapter 2711. In fact, they requested arbitration of the dispute prior to filing suit. Once the Association refused to enter into arbitration, appellants filed, on September 22, 1998, the instant declaratory judgment action. At that time they did not raise the question of the arbitrability of the issues in dispute, ask for a referral to arbitration or request a stay of the trial court proceedings pursuant to R.C. 2711.02. In short, appellants' complaint fails to provide any notice of the fact that appellants wanted to enforce the Declaration's arbitration clause.
The Association filed an answer and several counterclaims based on various provisions of the Declaration. Appellants answered and, again, did not raise the question of arbitration. It was over one year later, on February 1, 2000, that appellants requested a stay and arbitration in their motion for summary judgment. Thus, in considering the totality of the circumstances in this case, we cannot say that the court's attitude in finding that appellants waived their right to arbitration was unreasonable, arbitrary or unconscionable. Assignment of Error No. VI is found not well-taken.
In their Assignments of Error Nos. IV and V, appellants maintain that the trial court erred in granting the Association's motion for summary judgment on appellants' affirmative defenses of laches and equitable estoppel. The court granted summary judgment to the Association with regard to the subject matter of these assignments.
Our review of the trial court's denial or grant of summary judgment isde novo. Grafton v. Ohio Edison Co. (1996), 77 Ohio St.3d 102, 105. A party can prevail on a motion for summary judgment only if: (1) no genuine issue of material fact remains to be litigated; (2) it appears from the evidence that reasonable minds can reach but one conclusion and that conclusion is adverse to the nonmoving party; and (3) the moving party is entitled to summary judgment as a matter of law. Civ.R. 56(C); Hortonv. Harwick Chem. Corp. (1995), 73 Ohio St.3d 679, paragraph three of the syllabus.
We note at the outset that the Association asserts that appellants waived their right to raise the affirmative defense of laches by purchasing Unit 117, accepting the deed and thereby agreeing to be bound by the terms of the Declaration. The Association points to Article XX, Section 2 of the Declaration which reads, in pertinent part:
 "Failure by * * * the Association * * * to proceed with * * * enforcement shall in no event be deemed a waiver of the right to enforce at a later date the original violation or subsequent violation, nor shall the doctrine of laches nor any statute of limitations bar the enforcement of any such restriction, conditions, covenant, reservation, easement or charge."
We decline to accept the proposition that parties may contract away their right to raise the affirmative defenses of laches and the statute of limitations as authorized by Civ.R. 8(C).
The purpose of any statute of limitations is to prevent the assertion of stale claims due to the difficulty involved in asserting, and defending, a legal claim after a substantial lapse of time from the point the claim arose. Olnik v. Nationwide Mut. Ins. Co. (1999),133 Ohio App.3d 200, 211. Likewise, the purpose of the doctrine of laches is to prevent the enforcement of stale demands in those instances where "`a party has slept upon his rights, or acquiesced for a great length of time. * * *'". State ex re. Case v. Industrial Comm. of Ohio
(1986), 28 Ohio St.3d 383, 385, quoting Piatt v. Vattier (1835),34 U.S. 405, 416. To allow parties to eliminate these defenses contractually would effectively leave all unadjudicated controversies open for future lawsuits in the uncertain and even infinite future. Olnikv. Nationwide Mut. Ins. Co., 133 Ohio App.3d at 211. This would entirely defeat the very purpose of those defenses.
We further reject the argument that appellants could not raise the defense of laches as a bar to the Association's counterclaims because they came to the court with "unclean hands." Laches is an equitable doctrine and it is fundamental that he who comes into equity must come with clean hands. Christman v. Christman (1960), 171 Ohio St. 152, 154, 12 Ohio Op. 2d 172, 173. This maxim requires that the party raising the defense of laches must not be guilty of reprehensible conduct with respect to the subject matter of his or her suit. Kinner v. Lake Shore Michigan S. Ry. Co. (1904), 69 Ohio St. 339, paragraph one of the syllabus.
The Association maintains that appellants came to equity with unclean hands because they knowingly violated conditions set forth in the Declaration by constructing a conventional room, rather than a sunroom, on Unit 117's deck. They cite to Grand Bay of Brecksville Condo. v.Markos (Mar. 25, 1999), Cuyahoga App. No. 73964, unreported, to support this proposition. We find that Markos is distinguishable from the present case.
In Markos, the owner of the condominium unit constructed an enclosure on his concrete patio "without notifying or obtaining the consent of the Association." Unlike Mr. Markos, appellants first sought approval for the construction of a sunroom and apparently believed that they obtained that approval. The legal question, to be decided by the court, was whether that enclosure conformed to the approved construction or violated any provisions of the Declaration. Accordingly, the doctrine of unclean hands did not prevent appellants from raising the affirmative defense of laches.
We now turn to the merits of appellants' defenses. The doctrine of laches is an equitable doctrine and is defined as "`an omission to assert a right for an unreasonable and unexplained length of time, under circumstances prejudicial to the adverse party.'" Connin v. Bailey
(1984), 15 Ohio St.3d 34, 35, quoting Smith v. Smith (1957),107 Ohio App. 440, 443. In order to successfully invoke the doctrine, four elements must be demonstrated: (1) unreasonable delay or lapse of time in asserting a right; (2) absence of an excuse for the delay; (3) knowledge, actual or constructive, of the injury or wrong; and (4) prejudice to the other party. State ex rel. Meyers v. Columbus (1995),71 Ohio St.3d 603, 605. Material prejudice will not be inferred from a mere lapse of time. State, ex rel. Caspar v. Dayton (1990),53 Ohio St.3d 16, 20.
In the case under consideration, the evidence offered failed to demonstrate any delay, much less material delay, on the part of the Association in asserting its rights against appellants. Appellants began construction in early February 1998. The Association immediately sent them a letter stating that such action was in violation of the provisions of the Declaration and ordered them to cease construction. The record discloses that the Junkins disregarded the letter, finished construction of the enclosure, and subsequently attempted to sell the condominium. However, in order to complete the purchase of Unit 117 by Constance McDougal, the Junkins were required to bring the instant action and place $20,000 of the purchase price in escrow pending its outcome. As stated previously, appellants filed their action and the Association filed their counterclaims. From a recitation of these facts as they pertain to appellants, it can be readily discerned that the Association did not rest on its rights and that there was no material delay in asserting those rights as to these parties. Consequently, reasonable minds could only conclude that the Association was entitled to summary judgment on this issue as a matter of law. Therefore, appellant's Assignment of Error No. IV is found not well-taken.
Assertion of the affirmative defense of equitable estoppel requires proof that: (1) the opposing party made a factual misrepresentation; (2) that was misleading; (3) which induced actual reliance which was reasonable and in good faith; and (4) which caused detriment to the relying party. See Doe v. Blue Cross/Blue Shield of Ohio (1992),79 Ohio App.3d 369, 379.
Here, Brian Junkins, by means of affidavit, averred that he believed that he could construct the enclosure on his deck because he understood, after speaking with Mark Mitchell, that he could do so with the approval of all the unit owners and on the following "representation of approval by all the unit owners on September 1, 1995." He further alleged that he relied upon the "represented" dismissal of the 1996 lawsuit filed by the Association against Jamestown.
Neither what appellant understood after speaking with Mitchell nor the unit owners' purported approval are factual misrepresentations made by the Association. Assuming, arguendo, that the dismissal of the suit, without prejudice, was a representation, it was not a factual misrepresentation upon which Junkins could actually rely. It simply represented that the Association chose not to pursue their cause of action against Jamestown at that point in time. Moreover, shortly after they started to enclose the deck, the Junkins received a letter from the Association to cease construction. In light of this fact, appellants cannot now argue that they proceeded to complete the project in actual reliance that was reasonable and in good faith. Accordingly, the trial court did not err in granting the Association's motion for summary judgment on this issue, and appellants' Assignment of Error No. V is found not well-taken.
In their Assignment of Error No. II, appellants complain that the trial court committed prejudicial error by considering evidence at the trial that addressed the question of whether the Junkins obtained approval from the Association because that issue was determined in their favor on their motion for summary judgment.
The partial summary judgment entered by the common pleas court was interlocutory in nature because it was a judgment on less than all of the claims. Peters v. Ashtabula Metro. Hous. Auth. (1993), 89 Ohio App.3d 458,463. Thus, the trial court could, sua sponte, change, modify, or revise the partial grant of summary judgment at any time before a final judgment was entered in the case. Id. Moreover, the trial court expressly stated in its judgment entry that "unless new evidence shows otherwise, the sole issue remaining to be tried [in the Junkins case] is whether the current Sunroom on the Junkins' deck substantially complies with the proposal submitted by the Junkins to the Board of Trustees on September 1, 1995." Thus, the trial court did not strictly limit the evidence to be introduced at trial to the question of "substantial compliance." Furthermore, approval of the construction was one of the major issues in the Association's suit against Jamestown; therefore, the disputed evidence was necessary to prove that case. For all of these reasons, appellants' Assignment of Error No. II is found not well-taken.
Appellant's Assignments of Error Nos. I and III are inextricably intertwined and shall, therefore, be considered together. Assignment of Error No. I challenges the trial court's failure to find that the Board or its designated representative, Mark Mitchell, approved the construction of their sunroom by failing to respond to the September 1, 1995 letter sent to the builder. Assignment of Error No. III contends that the trial court erred in ruling that the Junkins enclosure, as constructed, was not "substantially similar" to the Four Seasons Series 230 White Sunroom "approved" by the Board's inaction.
As incorporated into the trial court's January 29, 2001 judgment entry, the Association's Findings of Fact include the following:
 "31. On February 3 or 4th, 1998, Brian Junkins commenced construction to add a room addition to his Unit by enclosing the ground level Open Air Deck on his Condominium Unit No. 117 at Spinnaker Bay Condominium. Transcript Page 27."
 "32. The construction of the room addition was done by conventional means, i.e., Wood Frame, Vinyl Siding, Aluminum Soffits, Interior Drywall. Transcript pages 29-30."
 "33. The room addition constructed is heated and air-conditioned by the condominium units furnace and is now a part of the normal living area of the Condominium. Transcript page 30."
 "34. Mr. Junkins constructed a stick-built room addition on his open air deck at Unit 117, which addition is not a manufactured Four Season Series 230 White Sunroom. Transcript page 36-37,; Stipulation by counsel, Transcript 125."
 "35. Brian Junkins did not submit any plans or specifications to the Spinnaker Bay Condominium Association, Inc. for permission or approval to build a conventional stick-built enclosure on the open-air Deck at Unit 117 at Spinnaker Bay condominium, as required by the Condominium Declaration. Transcript pgs.18, 46-48."
Conclusion of Law No. 13 reads:
 "The addition constructed on the Junkins Condominium Unit No. 117 differs from the 1995 proposal in terms of the type of construction, manner of materials and overall appearance of the structure, and is not built in substantial conformity with the September 1, 1995 request submitted to the condominium association."
In Conclusions of Law Nos. 15 and 17, the court held that the Junkins failed to submit plans for the room, as constructed, on Unit 117 and to thereby obtain the approval of the Board prior to construction. It therefore concluded that the room addition, as constructed, violated the Declaration and By-laws creating a plan for Spinnaker Bay. Appellants assert these findings are against the manifest weight of the evidence.
In reviewing the trial court's judgment, every reasonable presumption must be made in favor of the judgment and findings of fact. Seasons CoalCo. v. Cleveland (1984), 10 Ohio St.3d 77, 80. When a record reveals competent, credible evidence to support the trial court's factual findings, the reviewing court cannot disturb the court's judgment as against the manifest weight of the evidence. Faber v. Queen CityTerminals, Inc. (1994), 93 Ohio App.3d 197, 201, citing C.E. Morris Co.v. Foley Constr. Co. (1978), 54 Ohio St.2d 279, syllabus.
Based on a review of the record of this case, we find that there is competent, credible evidence to support the judgment of the trial court, and its factual conclusions. Without reiterating all of the evidence offered at the trial of this matter, competent, credible evidence was offered to establish that the room constructed by the Junkins was a "conventional room," that it was not substantially the equivalent of the Four Seasons Sunroom Series 230 proposed in the September 1, 1995 letter and accompanying brochure. As a result, even if we were to assume that the Board's failure to respond to that letter constituted approval, it would not affect the outcome of this cause. That is, because, as found by the trial court, the room that was built was actually a new and different type of structure than the one that was previously "approved," appellants were required to obtain prior approval pursuant to Article III, Section 2(O). They did not obtain prior approval thereby violating the Declaration. For these reasons, Appellants' Assignments of Error Nos. I and III are found not well-taken.
 JAMESTOWN APPEAL
Jamestown asks this court to consider the following assignments of error:
 "1. The Trial Court committed error in its failure to grant Defendant-Appellant, Jamestown Drive, Inc.'s Oral Motion at the end of the Plaintiff's case for a directive [sic] verdict.
 "2. The Trial Court committed error in failure to making a finding that under the doctrine of Laches, Defendant-Appellant, Jamestown Drive, Inc., should not be Ordered to remove the sunroom constructed on a limited common area.
 "3. The Trial Court committed error in reversing its Interlocutory Decree of August 25, 2000, the companion case herein, which was consolidated with the case against Jamestown Drive, Inc., without notice to the Defendant and based on the August 25, 2000 Entry, failed to find that the sunroom enclosure is on the limited common area."
In its first assignment of error, Jamestown claims that the trial court erred in denying its motion for a directed verdict. The basis of this motion was Spinnaker Bay's alleged failure to establish that the Spinnaker Bay Condominium Association is a legal entity having the capacity to sue and be sued.
Initially, we find that a motion for a directed verdict does not lie in a bench trial. Daugherty v. Dune (Dec. 30, 1999), Franklin App. No. 98AP-1580, unreported, citing Altimari v. Campbell (1978),56 Ohio App.2d 253, 256. Rather, Jamestown's motion must be deemed a motion to dismiss pursuant to Civ.R. 41(B)(2). Johnson v. Tansky SawmillToyota, Inc. (1994), 95 Ohio App.3d 164, 167. Under Civ.R. 41(B)(2), the trial court does not view the evidence in a light most favorable to the plaintiff as it does under a Civ.R. 50 motion for directed verdict; rather, the court actually determines whether plaintiffs have proven the necessary facts by the appropriate evidentiary standard. L.W.Shoemaker, M.D., Inc. v. Connor (1992), 81 Ohio App.3d 748, 752.
To reiterate, to the extent that a trial court's determination rests on findings of fact, those findings will not be overturned unless they are against the manifest weight of the evidence. Ford v. Star Bank N.A. (Aug. 27, 1998), Lawrence App. No. 97CA39, unreported. Thus, we cannot reverse the court's decision on the Civ.R. 41(B)(2) motion and the resultant judgment so long as it is supported by some competent, credible evidence. C.E. Morris Co. v. Foley Construction Co., supra.
R.C. 5311.20 reads, in pertinent part:
 "In any action relating to the common areas and facilities or to any right, duty, or obligation possessed or imposed upon the unit owners association, by statute or otherwise, the unit owners association may sue or be sued as a separate legal entity."
R.C. 5311.19 provides a unit owners association, among others, with the authority to seek legal redress for damages and/or injunctive relief for violations of the Declaration. In addition, R.C. 5311.23 allows the unit owners association to commence, in its own name, a declaratory judgment action to determine legal obligations under the condominium instruments and/or to seek injunctive relief.
In the present case, certified copies of the Declaration were filed and admitted into evidence. The Declaration defines the Spinnaker Bay Condominium Association as a not-for-profit corporation that is "one and the same as the Association created for the Condominium pursuant to the provisions of the Condominium Act [R.C. Chapter 5311]." All unit owners, that is, owners of each condominium unit, are members of the Association as required by R.C. 5311.08(A). Declaration, Article VII, Section 2. This document is some competent, credible evidence establishing that the Spinnaker Bay Condominium Association is a "unit owners association" within the meaning of R.C. Chapter 5311 and, as such, is a legal entity that could bring suit against Jamestown for an alleged violation of the Declaration. Accordingly, Jamestown's first assignment of error is found not well-taken.
Jamestown maintains, in its second assignment of error, that the trial court erred in failing to find that the Association's claim was barred by the affirmative defense of laches. Based on the law set forth in the Junkins/McDougal Assignment of Error No. IV as applied to the facts in Jamestown, we find this claim lacks merit.
The relevant facts reveal no unreasonable delay on the part of the Association in enforcing its rights under the Declaration. In March 1996, Jamestown commenced construction of the sunroom attached to Unit 125. In April 1996, the Association sent Jamestown a letter informing Jamestown that such construction was in violation of the "condominium association by-laws and condominium agreement." The letter ordered Jamestown to "immediately cease" said construction. The Association then brought suit in August 1996, seeking removal of the addition. As stated previously, this suit was voluntarily dismissed, without prejudice, in April 1997, but was re-instituted on January 11, 1999. A recitation of these procedural facts reflects little or no delay on the part of the Association in asserting its rights.
Moreover, in order to prevail on the affirmative defense of laches, the asserting party must also demonstrate, among other things, material prejudice. State ex rel. Roadway Express v. Indus. Comm. (1998),82 Ohio St.3d 510, 514. Unexplained or unreasonable delay in asserting a right is not enough. Id. Generally, there are two types of material prejudice, either of which necessitate the application of laches: (1) the loss of evidence helpful to the defendant's case; and (2) a change in the defendant's position that would not have occurred had the plaintiff not delayed in asserting its rights. State ex rel. Donovan v. Zajac (1997),125 Ohio App.3d 245, 250. The only prejudice alleged by Jamestown is its inability to sell Unit 125 due to the pending lawsuit. This allegation simply does not rise to the level of material prejudice. Accordingly, Jamestown's second assignment of error is found not well-taken.
Jamestown's third assignment of error contains assertions of more than one purported error. First, Jamestown contends that the trial court erred in reversing the August 25, 2000 order granting partial summary judgment to the Junkins and McDougal and allowing any evidence at trial that was not related to the "substantial compliance" question. Jamestown never requested summary judgment; thus, the August 25, 2000 order did not apply to Jamestown. Therefore, Jamestown was required to expect and prepare for the presentation of arguments and evidence on all issues raised in the declaratory judgment action filed against Jamestown by the Association.
Jamestown next argues that the evidence established that the sunroom and upper level deck constructed on Unit 125 substantially complied with the Four Seasons Sunroom Series 230 proposed in the September 1, 1995 letter. For the reasons stated in the Junkins-McDougal Assignments of Error Nos. I and III, this contention is meritless. We would only add that Jamestown never received any approval of any kind for the construction of the upper level deck and hot tub.
Finally, Jamestown apparently maintains that the trial court committed error when it asked the parties to address the applicability of Brooksv. Orshoski (1998), 129 Ohio App.3d 386, to the present case. While this case may or may not be applicable to this cause, the trial court's judgment is not based upon Brooks. Instead, and assuming implied approval by the Board of the sunroom proposed in the September 1, 1995 letter, the court's judgment is rooted in the fact that the structure built by Jamestown did not comport with that proposal. Therefore, pursuant to the Declaration, Jamestown was required to obtain approval of the planned structure prior to its construction. Jamestown did not obtain the mandated approval thereby violating the Declaration. Accordingly, Jamestown's third assignment of error is found not well-taken.
 THE ASSOCIATION'S CROSS-APPEAL
The Association raises the following assignments of error on cross-appeal:
 "I. THE TRIAL COURT ERRED IN USING A SUBSTANTIAL COMPLIANCE TEST TO DETERMINE WHETHER THE JUNKINS ADDITION WAS APPROVED IN ACCORDANCE WITH THE SEPTEMBER 1995 PROPOSAL AND THE PROVISIONS OF THE SPINNAKER BAY DECLARATION."
 "II. THE TRIAL COURT ERRED IN FAILING TO FIND THAT APPELLANTS' ADDITION CONSTITUTED A NUISANCE."
Both of the Association's assignments of error relate to the interlocutory grant of partial summary judgment to the Junkins and the denial of the Association's motion for summary judgment on August 25, 2000. In the end, final judgment was entered in favor of the Association and was based upon Findings of Fact and Conclusions of Laws formulated and submitted by the Association. We are of the opinion that this favorable judgment and our affirmance of that judgment renders any question concerning the asserted assignments of error moot. Accordingly, we will not consider the Association's cross-appeal.
The judgment of the Ottawa County Court of Common Pleas is affirmed. Brian and Debra Junkins, Constance McDougal and Jamestown Drive, Inc., are ordered to pay the costs of this appeal in equal shares.
 JUDGMENT AFFIRMED.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4, amended 1/1/98.
Melvin L. Resnick, J., and Mark L. Pietrykowski, P.J., CONCUR.