[Cite as *Byrd v. Lindsay Corp.*, 2020-Ohio-3870.]

| | | |
|---|---|---|
| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

MALCOLM BYRD, as personal
representative of the Estate of Wilbert Byrd,
deceased

      Appellee

      v.

LINDSAY CORPORATION, et al.

      Appellants

C.A. No.     29491

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE No.    MS 2018-00-0063

DECISION AND JOURNAL ENTRY

Dated: July 29, 2020

CALLAHAN, Presiding Judge.

{¶1} Appellant, Lindsay Corporation, appeals an order that granted a motion to quash/motion for a protective order related to a foreign subpoena issued by the Summit County Court of Common Pleas. This Court affirms.

I.

{¶2} Malcolm Byrd filed a complaint in Hamilton County, Tennessee against Lindsay Corporation ("Lindsay") and other defendants in his capacity as the personal representative of his father, Wilbert Byrd, who died in an automobile accident on July 2, 2016. With respect to Lindsay and its related corporate defendants, the complaint alleged that Wilbert Byrd suffered fatal injuries as a result of the defendants' negligence in connection with "the design, development, manufacture, assembly, testing, inspection, marketing, promotion, training, distribution,

advertising, sale or processing" of X-LITE guardrail end terminal and related guardrail systems. The complaint also asserted a claim for products liability.

{¶3} On November 27, 2018, Lindsay filed a foreign subpoena duces tecum issued by the Circuit Court of Hamilton County, Tennessee, with the Summit County Court of Common Pleas pursuant to the Uniform Interstate Deposition and Discovery Act, R.C. 2319.09. The subpoena directed John Durkos, a nonparty who resides in Summit County, Ohio, to produce:

> All documents (electronic and hard copy) and communications (including, but not limited to, e-mail, memoranda, letter[s], notes, reports, draft reports, calendar appointments) that discuss, mention or relate in any way to Lindsay, X-Lite, X-Tension, or MAX-Tension. For e-mail communications, identify any individual(s) that are blind copied (BCC);
>
> All communications (including, but not limited to, e-mail, memoranda, letter[s], notes, reports, draft reports calendar appointments) between you and Stephen Eimers. For e-mail communications, identify any individual(s) that are blind copied (BCC);
>
> All documents (electronic and hard copy) that discuss, mention or relate in any way to Stephen Eimers;
>
> All communications (including, but not limited to, e-mail, memoranda, letter[s], notes, reports, draft reports, calendar appointments) between you and Victor Childers. For e-mail communications, identify any individual(s) that are blind copied (BCC);
>
> All communications (electronic and hard copy) that discuss, mention or relate in any way to Victor Childers;
>
> All communications (including, but not limited to, e-mail, memoranda, letter[s], notes, reports, draft reports, calendar appointments) between you and the Tennessee Department of Transportation. For e-mail communications, identify any individual(s) that are blind copied (BCC);
>
> All documents (electronic and hard copy) that discuss, mention or relate in any way to the Tennessee Department of Transportation;
>
> All communications (including, but not limited to, e-mail, memoranda, letter[s], notes, reports, draft reports, calendar appointments) between [*sic*] and any member of the Tennessee General Assembly, past and present, including their legislative aides. For e-mail communications, identify any individual(s) that are blind copied (BCC);

> All documents (electronic and hard copy) that discuss, mention or relate in any way to any member of the Tennessee General Assembly, past and present, including their legislative aides;
>
> All communications (including, but not limited to, e-mail, memoranda, letter[s], notes, reports, draft reports, calendar appointments) between you and any official elected to the United States Congress, past and present, including their legislative aides. For e-mail communications, identify any individual(s) that are blind copied (BCC); [and]
>
> All documents (electronic and hard copy) that discuss, mention or relate in any way to any official elected to the United States Congress, past and present, including their legislative aides[.]

Mr. Durkos filed written objections, then moved to quash the subpoena and for a protective order, arguing, in part, that the subpoena required the disclosure of privileged or protected matter and requested documents the subject matter of which was not relevant to the subject matter involved in the underlying action. Specifically, Mr. Durkos argued that because he was an employee of Lindsay's competitor, whose conduct and products were not at issue in the underlying litigation, the information sought by Lindsay could not lead to information relevant to the issues in that case and could contain trade secrets. He also noted that Lindsay could obtain the information requested through other means and that the potential harm to Mr. Durkos and his employer outweighed Lindsay's need to obtain it through discovery.

{¶4} On April 11, 2019, the magistrate granted Mr. Durkos' motion, concluding that the material sought by Lindsay was not relevant to the underlying action and that the subpoena constituted a "fishing expedition" on Lindsay's part. In the alternative, the magistrate also noted that "Lindsay * * * failed to establish a substantial need for the subpoenaed documents from Mr. Durkos" and "failed to establish that the requested documents cannot be obtained through alternate means."

{¶5} Lindsay filed objections to the magistrate's decision. On July 2, 2019, the trial court overruled Lindsay's objections, adopted the magistrate's decision, and granted Mr. Durkos' motion. Lindsay filed this appeal.

II.

### ASSIGNMENT OF ERROR

THE TRIAL COURT ERRED AS A MATTER OF LAW AND ABUSED ITS DISCRETION IN GRANTING APPELLEE JOHN DURKOS' MOTIONS TO QUASH AND FOR PROTECTIVE ORDER[.]

{¶6} In Lindsay's only assignment of error, it has argued that the trial court erred by granting Mr. Durkos' motion to quash or for a protective order prohibiting the discovery sought by the subpoena. This Court does not agree.

{¶7} R.C. 2319.09, which codifies the Uniform Interstate Depositions and Discovery Act, describes the procedures for an Ohio court to issue a subpoena for discovery originating in a foreign jurisdiction. Pursuant to the Act, a party seeking discovery in Ohio must submit a foreign subpoena to an Ohio clerk of court, which must in turn "promptly issue a subpoena for service upon the person to which the foreign subpoena is directed." R.C. 2319.09(C)(2). The Ohio Rules of Civil Procedure apply to subpoenas issued under R.C. 2319.09, and "[a]n application to the court for a protective order or to enforce, quash, or modify a subpoena" may be filed by the person from whom discovery is sought. R.C. 2319.09(E)/(F). *Compare Lampe v. Ford Motor Co.*, 9th Dist. Summit No. 19388, 2000 WL 59907, *3 (concluding that under a previous version of R.C. 2319.09, an Ohio Court had "the authority to examine the facts underlying a subpoena and to quash when necessary").

{¶8} Civ.R. 26, which regulates discovery, provided at all times relevant to this case that "[p]arties may obtain discovery regarding any matter, not privileged, which is relevant to the

subject matter involved in the pending action, whether it relates to the claim or defense of the party seeking discovery or to the claim or defense of any other party[.]" Civ.R. 26(B)(1).[1] On motion of a party or any other person from whom discovery is sought, a trial court "may make any order that justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense" including orders that provide that the discovery will not be allowed. Civ.R. 26(C). An individual subject to a request for discovery may seek relief under Civ.R. 26(C)(1) on the basis that the material sought is not "'relevant to the subject matter involved in the pending action.'" *See*, *e.g.*, *Herrick-Hudson, L.L.C. v. Cleveland-Cuyahoga Cty. Port Auth.*, 8th Dist. Cuyahoga No. 104053, 2016-Ohio-7716, ¶ 22. Similarly, material subpoenaed pursuant to Civ.R. 45 "'must have some relevance to [the proceeding] and be reasonably necessary[.]'" *Martin v. The Budd Co.*, 128 Ohio App.3d 115, 119 (9th Dist.1998), quoting *McMillan v. Ohio Civ. Rights Comm.*, 39 Ohio Misc. 83, 94 (C.P.1974). Consequently, a motion to quash under Civ.R. 45(C) may also be granted if the material is not relevant to the underlying proceeding. *See Martin* at 120.

{¶9} This Court reviews a trial court's decision to quash a subpoena or to grant a protective order for an abuse of discretion. *Praetorium Secured Fund I, L.P. v. Keehan*, 9th Dist. Lorain No. 18CA011433, 2019-Ohio-3414, ¶ 8, citing *Kaplan v. Tuennermann-Kaplan,* 9th Dist. Wayne No. 11CA0011, 2012-Ohio-303, ¶ 10 (motion to quash); *Herrick-Hudson* at ¶ 22 (protective order).[2] An abuse of discretion is present when a trial court's decision "'is contrary to

---

[1] Substantial amendments to Civ.R. 26 became effective on July 1, 2020. Those amendments are not at issue in this appeal.

[2] Lindsay's merit brief frames its arguments in terms of an abuse of discretion, but suggests in its reply brief that this Court should review each argument under a de novo standard. This Court does review a trial court's interpretation and application of statutes de novo. *Karvo Cos., Inc. v. Ohio Dept. of Transp.*, 9th Dist. Summit No. 29294, 2019-Ohio-4556, ¶ 6. This rule is not implicated in this case. Regardless, our discussion is limited to the trial court's determination

law, unreasonable, not supported by evidence, or grossly unsound.'" *Menke v. Menke*, 9th Dist. Summit No. 27330, 2015-Ohio-2507, ¶ 8, quoting *Tretola v. Tretola*, 3d Dist. Logan No. 8-14-24, 2015-Ohio-1999, ¶ 25.

{¶10} During a hearing before the magistrate, Lindsay noted that by that point, "only Requests 1 through 5 [were] at issue[.]" Those requests required the production of:

> All documents (electronic and hard copy) and communications (including, but not limited to, e-mail, memoranda, letter[s], notes, reports, draft reports, calendar appointments that discuss, mention or relate in any way to Lindsay, X-Lite, X-Tension, or MAX-Tension. For e-mail communications, identify any individual(s) that are blind copied (BCC);

> All communications (including, but not limited to, e-mail, memoranda, letter[s], notes, reports, draft reports calendar appointments) between you and Stephen Eimers. For e-mail communications, identify any individual(s) that are blind copied (BCC);

> All documents (electronic and hard copy) that discuss, mention or relate in any way to Stephen Eimers;

> All communications (including, but not limited to, e-mail, memoranda, letter[s], notes, reports, draft reports, calendar appointments) between you and Victor Childers. For e-mail communications, identify any individual(s) that are blind copied (BCC); [and]

> All communications (electronic and hard copy) that discuss, mention or relate in any way to Victor Childers[.]

The first request pertains to documents that relate to four products manufactured by Lindsay, the direct competitor of the company that employs Mr. Durkos. The second and third requests pertain to an individual identified as Stephen Eimers. According to the parties, Mr. Eimers is the parent of a young woman who perished in an automobile accident that occurred after the one in which Wilbert Byrd lost his life. The parties also note that Mr. Eimers is the plaintiff in litigation that

---

regarding relevancy, which is an exercise of its discretionary function in regulating discovery. *See Ruwe v. Bd. of Twp. Trustees of Springfield Twp.*, 29 Ohio St.3d 59, 61 (1987); *State ex rel. Daggett v. Gessaman*, 34 Ohio St.2d 55, 57 (1973).

alleges that Lindsay's guardrail end terminals and related systems were at fault in the accident that led to her death and that Mr. Eimers has become an outspoken advocate for action against Lindsay, particularly in the context of state governments. The fourth and fifth requests relate to documents that involve an individual identified as Victor Childers. According to Lindsay, Mr. Childers is "a former road safety consultant to [the] Michigan [Department of Transportation], whom Mr. Durkos introduced to Mr. Eimers[.]"

{¶11} Lindsay argued that the documents in requests numbers one through five were relevant in anticipation that Mr. Byrd would attempt to prove defects in the X-LITE system indirectly—namely, by presenting evidence that various state departments of transportation had removed or had considered removing the X-LITE system from their roadways. Lindsay reasoned that Mr. Eimers' advocacy in this regard—which Lindsay characterized as a "crusade to destroy X-LITE"—would provide an alternative to this narrative. Specifically, Lindsay maintained that the documents set forth in request numbers one through five would demonstrate that the governmental entities acted not based on an assessment of the safety of the X-LITE system, but in response to a concerted campaign by Mr. Eimers to discredit Lindsay while Mr. Durkos "worked surreptitiously to aid" his efforts.

{¶12} The claims at issue in this case, however, allege negligence and products liability in connection with the death of Wilbert Byrd on July 2, 2016. As the trial court noted, the accident that took the life of Mr. Eimers' daughter occurred on November 1, 2016. Mr. Eimers' advocacy, and the relationship between Mr. Durkos and Mr. Eimers that forms the basis that Lindsay articulated for the relevance of the document requests, postdates the accident at issue in this case by at least four months. As the trial court also observed, correspondence between Lindsay and Mr. Durkos' employer on September 26, 2018, also calls into question Lindsay's purpose for

seeking the documents at issue because in that correspondence, Lindsay suggested that the information purportedly contained in the documents could give rise to claims of "'tortious interference with business relations, trade libel, and/or [u]nfair [c]ompetition.'"

{¶13} This Court has observed that "discovery proceedings may not be used to conduct a mere fishing expedition for incriminating evidence." *Martin*, 128 Ohio App.3d at 119, citing *Manofsky v. Goodyear Tire & Rubber Co.*, 69 Ohio App.3d. 663, 668 (9th Dist.1990). Given that Lindsay characterized Mr. Durkos' alleged relationship with Mr. Eimers as tortious conduct and that document requests one through five pertain to events that occurred after the date of Wilbert Byrd's death, the trial court did not err by concluding that those documents were not relevant to the underlying litigation. It follows that the trial court did not abuse its discretion by quashing the subpoena pursuant to Civ.R. 45(C) or by granting Mr. Durkos' motion for a protective order pursuant to Civ.R. 26(C).

{¶14} Lindsay's assignment of error is overruled.

### III.

{¶15} Lindsay's assignment of error is overruled. The judgment of the Summit County Court of Common Pleas is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellants.

LYNNE S. CALLAHAN
FOR THE COURT

CARR, J.
TEODOSIO, J.
CONCUR.

APPEARANCES:

MATTHEW J. BLAIR, Attorney at Law, for Appellants.

SHELBY RINEY, Attorney at Law, for Appellants.

C. RICHARD MCDONALD, Attorney at Law, for Appellee.

MARGO S. MEOLA, Attorney at Law, for Appellee.