[Cite as *Byrd v. Lindsay Corp.*, 2020-Ohio-5461.]

# IN THE COURT OF APPEALS OF OHIO

## SEVENTH APPELLATE DISTRICT
## MAHONING COUNTY

MALCOM BYRD, AS PERSONAL REPRESENTATIVE OF THE ESTATE
OF WILBERT BYRD, DECEASED,

Plaintiff-Appellee,

v.

LINDSAY CORPORATION ET AL.,

Defendants-Appellants.

---

**OPINION AND JUDGMENT ENTRY**
Case No. 19 MA 0116

---

Civil Appeal from the
Court of Common Pleas of Mahoning County, Ohio
Case No. 2018RP177

**BEFORE:**
David A. D'Apolito, Cheryl L. Waite, Carol Ann Robb, Judges.

---

**JUDGMENT:**
Affirmed.

---

*Atty. Evan Palik,* Collins, Roche, Utley & Garner, LLC, 520 South Main Street, Suite 2551, Akron, Ohio 44311, and *Atty. Margo Meola,* Bonezzi Switzer Polito & Hupp Co. L.P.A., 3701 Boardman-Canfield Road, Canfield, Ohio, for David Reese, Non Party and

*Atty. Matthew Blair,* Blair & Latell Co. L.P.A., 724 Youngstown Warren Road, Niles, Ohio 44446, and *Atty. Shelby Riney,* Cozen O'Connor, One Liberty Place, 1650 Market Street, Suite 2800 Philadelphia, PA 19103, for Defendants-Appellants.

Dated: November 19, 2020

_____

**D'Apolito, J.**

{¶1}    Appellant, Lindsay Corporation ("Lindsay"), appeals the judgment entry of the Mahoning County Court of Common Pleas sustaining Appellee, David A. Reese III's Motion to Quash and for Protective Order Regarding Non-Party Foreign Subpoena, and overruling Lindsay's corresponding Motion to Compel Response to Subpoena. The subpoena was issued in a product liability and negligence case in the Circuit Court of Hamilton County, Tennessee, captioned *Malcolm Byrd, Personal Representative of the Estate of Wilbert Byrd v. Valmont Industries, Inc., et al.*, Case No. 17 C 747, and served on Reese, a resident of Mahoning County, pursuant to R.C. 2319.09, which codifies the Uniform Interstate Depositions and Discovery Act.  Reese is an employee of Lindsay's main business competitor.

{¶2}    Lindsay alleges that Reese acted in concert with a private citizen and non-party to the Tennessee action, Steven Eimers, to successfully lobby state departments of transportation ("state DOTs") in twenty states to remove Lindsay's product, a guardrail end terminal, from their list of qualified products ("QPL"), and, in many states, to physically remove the product from their highway systems.  Lindsay asserts the Estate will rely on the actions of the state DOTs to establish that Lindsay's product is defective.

{¶3}    As a consequence, Lindsay seeks any information provided by Reese to Eimers and state DOT employees in order to establish that Reese and his employer armed Eimers and others with false technical information regarding Lindsay's product, with the sole intent of destroying a business competitor.  Lindsay contends that the state DOTs did not remove Lindsay's product "based on any independent finding of a defect," but, instead, because "they were heavily influenced by pressure from false publicly provided information from, among others, [Eimers], who was covertly being coached by high-ranking officials of [Reese's employer]."  (Reply Brf., p. 3.)

{¶4}    Based on correspondence from Lindsay's national counsel, in which he observes that Reese's alleged conduct constitutes tortious interference with business relationships, trade libel, and unfair competition, Reese argues that the information is being sought for the purpose of a threatened litigation, but is not relevant to the current

litigation.  Reese further argues that the subpoena places an undue burden upon him, and that it seeks proprietary and confidential information. Finally, Reese asserts that Lindsay failed to demonstrate a substantial need for information that could not be gathered through alternative means, as any information regarding the actions of the state DOTs is accessible from the states themselves through a public records request.

**{¶5}**   For the following reasons, we find that the trial court did not abuse its discretion in concluding that the requested information is not relevant to the Tennessee action.

## FACTS AND PROCEDURAL HISTORY

**{¶6}**   On June 28, 2107, Malcolm Byrd filed a complaint in Hamilton County, Tennessee against Lindsay and other defendants, including the state of Tennessee, in his capacity as the personal representative of his father, Wilbert Byrd, who died in an automobile accident in Tennessee on July 2, 2016. The complaint alleges that Wilbert suffered fatal injuries as a result of Lindsay and its related corporate defendants' negligence in connection with "the design, development, manufacture, assembly, testing, inspection, marketing, promotion, training, distribution, advertising, sale or processing" of the X-LITE guardrail end terminal and related guardrail systems. The complaint also asserts a claim for products liability.

**{¶7}**   End terminals are a part of the complete guardrail system and are connected to the footage of the standard guardrail.  The purpose of the end terminal is to shield the blunt end of the guardrail, and prevent penetration of the guardrail into a vehicle in the event of a collision.  (Reese Aff., ¶ 2.)

**{¶8}**   Wilbert was a passenger in a Ford Explorer, which was traveling on I-75 in Tennessee and collided with an X-LITE end terminal ("X-LITE") and guardrail system manufactured by Lindsay.  According to the complaint, the guardrail pierced the vehicle's frame and caused Wilbert's fatal injuries.

**{¶9}**   Lindsay and Road Systems, Inc., a corporation with its central headquarters based in Big Spring, Texas ("RSI") are two of only three producers of end terminals. Reese is the Product Manager at RSI. (*Id.*)  Neither Reese nor RSI are parties to the Tennessee action.

{¶10} During the discovery phase of the Tennessee action, Lindsay issued a subpoena *duces tecum* for documents to Eimers. Eimers has a separate case pending against Lindsay and the other defendants. Eimers' complaint alleges that his daughter's death on November 1, 2016 was the result of a collision with an X-LITE end terminal. Neither Reese nor RSI is a party to the Eimers' action, however Eimers and the Estate share the same counsel.

{¶11} Following his daughter's death, Eimers became a relentless and vocal critic of Lindsay and the X-LITE. He has participated extensively in the public discussion of alleged defects and danger associated with the product, having provided testimony before numerous committees, and he has written hundreds of electronic mails to various state and Federal authorities.

{¶12} However, it is important to note that Virginia and Tennessee removed the X-LITE from the state's QPL in early fall of 2016, prior to the death of Eimers' daughter. In the spring of 2017, the Tennessee legislature passed a bill to remove the X-LITE from the state's highway system. In 2018, Tennessee passed a resolution calling for the removal of the X-LITE from roads in the United States due to in-service performance of the devices resulting in unacceptable safety levels. The resolution mandated that certified copies be forwarded to all state DOTs.

{¶13} According to Lindsay, Eimers' document production in the Tennessee action (roughly 4,300 documents) included multiple text messages and communications exchanged between Eimers and Reese. Lindsay contends that the text messages reveal Reese's and RSI's participation in Eimers' campaign against Lindsay and the X-LITE.

{¶14} Reese concedes that the Eimers' document production contained communications between Eimers and another RSI employee and Ohio resident, John Durkos, but asserts that it contains no communications between Eimers and Reese. Because Eimers is a layman, Lindsay asserts that Eimers' criticism of the design and operation of the product was informed by Reese and Durkos.

{¶15} According to Reese's brief, twenty states have removed the X-LITE from their respective QPLs, and, further, many have removed them from their highway systems at great expense. Lindsay counters that the Federal Highway Commission examined the

X-LITE and concluded that it presents no safety concerns, and further, that the X-LITE performed as designed in the Eimers' collision.

{¶16} On November 26, 2018, Lindsay filed a foreign subpoena *duces tecum* issued in the Tennessee action with the Mahoning County Court of Common Pleas pursuant to the Uniform Interstate Deposition and Discovery Act, R.C. 2319.09. The subpoena directs Reese to produce all of the following dated from January 1, 2015 to the present:

(1) All documents (electronic and hard copy) and communications (including, but not limited to, e-mail, memoranda, letter[s], notes, reports, draft reports, calendar appointments) that discuss, mention or relate in any way to Lindsay, X-Lite, X-Tension, or MAX-Tension. For e-mail communications, identify any individual(s) that are blind copied (BCC);

(2) All communications (including, but not limited to, e-mail, memoranda, letter[s], notes, reports, draft reports calendar appointments) between you and Stephen Eimers. For e-mail communications, identify any individual(s) that are blind copied (BCC);

(3) All documents (electronic and hard copy) that discuss, mention or relate in any way to Stephen Eimers;

(4) All communications (including, but not limited to, e-mail, memoranda, letter[s], notes, reports, draft reports, calendar appointments) between you and Victor Childers [a former Michigan Department of Transportation road safety consultant]. For e-mail communications, identify any individual(s) that are blind copied (BCC);

(5) All documents (electronic and hard copy) that discuss, mention or     relate in any way to Victor Childers;

(6) All communications (including, but not limited to, e-mail, memoranda, letter[s], notes, reports, draft reports, calendar appointments) between you

Case No. 19 MA 0116

and the Tennessee Department of Transportation. For e-mail communications, identify any individual(s) that are blind copied (BCC);

(7) All documents (electronic and hard copy) that discuss, mention or relate in any way to the Tennessee Department of Transportation;

(8) All communications (including, but not limited to, e-mail, memoranda, letter[s], notes, reports, draft reports, calendar appointments) between and [sic] any member of the Tennessee General Assembly, past and present, including their legislative aides. For e-mail communications, identify any individual(s) that are blind copied (BCC);

(9) All documents (electronic and hard copy) that discuss, mention or relate in any way to any member of the Tennessee General Assembly, past and present, including their legislative aides;

(10) All communications (including, but not limited to, e-mail, memoranda, letter[s], notes, reports, draft reports, calendar appointments) between you and any official elected to the United States Congress, past and present, including their legislative aides. For e-mail communications, identify any individual(s) that are blind copied (BCC); [and]

(11) All documents (electronic and hard copy) that discuss, mention or relate in any way to any official elected to the United States Congress, past and present, including their legislative aides[.]

{¶17} A virtually identical subpoena was issued to Durkos in Stark County. The trial court in Stark County sustained a motion to quash predicated upon the same arguments presented in Mahoning County. At the hearing on the motion to quash, Durkos limited the motion to items one through five of the subpoena.

{¶18} The Ninth District affirmed the judgment entry of the trial court, based on the relevance of the requested information to the Tennessee action, and without regard to Durkos' assertions of undue burden or availability of the information through other means. The Ninth District opined:

Case No. 19 MA 0116

Lindsay argued that the documents in requests numbers one through five were relevant in anticipation that Mr. Byrd would attempt to prove defects in the X-LITE system indirectly—namely, by presenting evidence that various state departments of transportation had removed or had considered removing the X-LITE system from their roadways. Lindsay reasoned that Mr. Eimers' advocacy in this regard—which Lindsay characterized as a "crusade to destroy X-LITE"—would provide an alternative to this narrative. Specifically, Lindsay maintained that the documents set forth in request numbers one through five would demonstrate that the governmental entities acted not based on an assessment of the safety of the X-LITE system, but in response to a concerted campaign by Mr. Eimers to discredit Lindsay while Mr. Durkos "worked surreptitiously to aid" his efforts.

The claims at issue in this case, however, allege negligence and products liability in connection with the death of Wilbert Byrd on July 2, 2016. As the trial court noted, the accident that took the life of Mr. Eimers' daughter occurred on November 1, 2016. Mr. Eimers' advocacy, and the relationship between Mr. Durkos and Mr. Eimers that forms the basis that Lindsay articulated for the relevance of the document requests, postdates the accident at issue in this case by at least four months. As the trial court also observed, correspondence between Lindsay and Mr. Durkos' employer on September 26, 2018, also calls into question Lindsay's purpose for seeking the documents at issue because in that correspondence, Lindsay suggested that the information purportedly contained in the documents could give rise to claims of " 'tortious interference with business relations, trade libel, and/or [u]nfair [c]ompetition.' "

This Court has observed that "discovery proceedings may not be used to conduct a mere fishing expedition for incriminating evidence." Martin, 128 Ohio App.3d at 119, citing *Manofsky v. Goodyear Tire & Rubber Co.*, 69 Ohio App.3d. 663, 668 (9th Dist.1990). Given that Lindsay characterized Mr. Durkos' alleged relationship with Mr. Eimers as tortious conduct and

that document requests one through five pertain to events that occurred after the date of Wilbert Byrd's death, the trial court did not err by concluding that those documents were not relevant to the underlying litigation. It follows that the trial court did not abuse its discretion by quashing the subpoena pursuant to Civ.R. 45(C) or by granting Mr. Durkos' motion for a protective order pursuant to Civ.R. 26(C).

*Byrd v. Lindsay Corp.*, 9th Dist. Summit No. 29491, 2020-Ohio-3870, ¶¶ 11-13.

**{¶19}** In the objections to the subpoena filed on December 14, 2018, Reese alleges that the subpoena is overbroad and unduly burdensome, and that it seeks confidential research information, proprietary materials, private internal business data, product development documents, protected commercial information, business strategy and contracts in the industry and in various state agencies from an employee of Lindsay's main competitor. Reese further argues that the information sought is irrelevant to the Tennessee case, in which Byrd asserts claims for negligence and products liability.

**{¶20}** In the motion to quash and for protective order filed on January 30, 2019, Reese similarly asserts that "[t]he requests made in the subpoena are disingenuous and are calculated to allow Lindsay to access otherwise unobtainable trade secrets, contact information and confidential business information held by RSI. There is no reasonable expectation that anything that is derived from the production of the documents will or could be utilized or admitted in the [Tennessee action]." (1/30/19 Memorandum in Support of Motion to Quash, p. 2.)

**{¶21}** Lindsay filed its omnibus response in opposition to Reese's motions, as well as a motion to compel, on February 8, 2019. According to the response brief, "the Tennessee Court overseeing this case granted, over [the Estate's] objection – Lindsay's request to issue a similar subpoena duces tecum to [RSI], when presented with facts regarding [Reese and Dukos'] involvement in efforts to undermine X-LITE." (Response, p. 2.)

**{¶22}** In order to establish the RSI employees' role in Eimer's various challenges to X-LITE product, Lindsay cites an October 2017 electronic mail sent to Eimers, Reese,

and Durkos by Childers, a former Michigan Department of Transportation road safety consultant, which reads, in pertinent part:

> [I]f you want me to kill the x-shit I need 200 minimum actual locations . . .I want it "dead' so it don't kill anymore . . . Get the locations, I will do my best to get that shit gone . . . Get the locations, we will kill it or I make a x-shit BBQ & buy the steak . . .

**{¶23}** Lindsay asserts that the electronic mail establishes that "[*Durkos*] worked surreptitiously to aid [Eimers] in his crusade to destroy X-LITE, including submissions for the Federal Highway Administration and state departments of transportation" * * *all with the obvious intent of sabotaging X-LITE sales to the benefit of RSI. (Emphasis added)(Response at p. 6.) The response brief contains excerpts from many other electronic mails and text that include Durkos, but do not include Reese.

**{¶24}** Lindsay concludes that any argument that actions taken by state transportation departments prove that the X-LITE is defective "conveniently ignores that these decisions were the likely result of the overwhelming pressure exerted on state DOTs by [Eimers], often relying on the assistance he obtained from [Durkos] behind the scenes." (*Id.*) As a consequence, Lindsay states, "[i]n light of such overwhelming evidence of the symbiotic relationship between [Durkos and Eimers], *and evidence suggesting [Reese] may have assisted in their endeavors against X-LITE,"* Lindsay served the subpoena at issue in this appeal on Reese. (Emphasis added)(*Id.* at 10.)

**{¶25}** In Reese's state court reply brief, filed on February 27, 2019, he argues that the subpoena seeks information relevant to a proposed suit that may be filed by Lindsay against Reese's employer, RSI. He cites a September 26, 2018 letter from Lindsay's National Counsel to RSI, which reads, in pertinent part, "[s]ome of the communications we have seen may constitute tortious interference with business relations, trade libel and/or Unfair Competition." (9/26/18 Correspondence, Exh. G attached to Reply Brief.)

**{¶26}** According to Reese's Supplemental Affidavit, he has "no documents or communications which would be responsive to items [six through eleven] as it relates to the X-LITE product." (Reese Supp. Aff., ¶ 4.) Lindsay interprets Reese's averment as an

admission that he has in his possession the communications described in items one through five of the subpoena.

**{¶27}** The parties attempted to resolve Reese's objections to the subpoena prior to the filing of the objections and motion to quash. According to Lindsay's appellate brief, Lindsay offered to modify the subpoena to reflect that no proprietary or confidential information or trade secrets were requested. Reese rejected Lindsay's offer to modify the subpoena.

**{¶28}** A hearing on the motion was conducted by the magistrate on April 11, 2019. The magistrate heard oral argument but no testimony was offered in support of the competing motions. On June 11, 2019, the magistrate issued his decision granting the motion to quash and for protective order and denying Lindsay's corresponding motion to compel. Lindsay filed timely objections to the magistrate's decision on July 3, 2019 and Reese filed his reply on July 11, 2019.

**{¶29}** In the September 18, 2019 judgment entry quashing the subpoena, the trial court characterized Lindsay's assertion that the Estate would argue in the Tennessee action that the state's removal of the X-LITE was proof that it is defective as speculation. The trial court opined that the information, requested from a direct competitor, sought private internal business data and other privileged material. Next, the trial court concluded that the requested information was not relevant to the Tennessee action. Finally, the trial court found that Lindsay failed to demonstrate a substantial need for the information from Reese, because the information was readily available through a Freedom of Information Act request with the respective states. The judgment entry reads, in pertinent part, "There being no just cause for delay, Judgment is entered as above specified." (9/18/19 J.E., p. 8.)

## LAW

**{¶30}** R.C. 2319.09, which codifies the Uniform Interstate Depositions and Discovery Act, describes the procedures for an Ohio court to issue a subpoena for discovery originating in a foreign jurisdiction. Pursuant to the Act, a party seeking discovery in Ohio must submit a foreign subpoena to an Ohio clerk of court, which must in turn "promptly issue a subpoena for service upon the person to which the foreign

subpoena is directed." R.C. 2319.09(C)(2). The Ohio Rules of Civil Procedure apply to subpoenas issued under R.C. 2319.09, and "[a]n application to the court for a protective order or to enforce, quash, or modify a subpoena" may be filed by the person from whom discovery is sought. R.C. 2319.09(E) &(F).

**{¶31}** The Rules of Civil Procedure contain liberal discovery provisions. Civ.R. 26, which regulates discovery, provides that "[p]arties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the party seeking discovery or to the claim or defense of any other party[.]" Previous Civ.R. 26(B)(1).

**{¶32}** Civ.R. 26 was amended on July 1, 2020 to align the Ohio rule with the federal rule in many respects. Civ.R. 26(B)(1) now includes language bearing on proportionality, which contemplates greater judicial involvement in the discovery process, and, thus, acknowledges the reality that discovery cannot always operate on a self-regulating basis. Neither party contends that the amendments are applicable in the above-captioned appeal.

**{¶33}** Ohio courts have observed that the standard for relevancy during discovery "is much broader than the test for relevancy used at trial." *Block Communications, Inc. v. Pounds*, 6th Dist. Lucas No. L-13-1224, 2015-Ohio 2679, ¶ 41, citing *Hope Academy Broadway Campus v. White Hat Mgmt., LLC*, 10th Dist. Franklin No. 12AP–116, 2013-Ohio-911, ¶ 42. Accordingly, "[m]atters are only irrelevant by the discovery test when the information sought will not reasonably lead to the discovery of admissible evidence." *Tschantz v. Ferguson*, 97 Ohio App.3d 693, 715, 647 N.E.2d 507 (8th Dist.1994). Moreover, " 'the concept of relevancy as it applies to discovery is not to limit it to the issues in the case, but to the subject matter of the action, which is a broader concept.' " *Dater v. Charles H. Dater Found.*, 1st Dist. Hamilton Nos. C–02675, C–02784, 2003-Ohio-7148, 2003 WL 23024026, ¶ 51, quoting *Dennis v. State Farm Ins. Co.*, 143 Ohio App.3d 196, 204, 757 N.E.2d 849 (7th Dist.2001).

**{¶34}** An individual subject to a request for discovery may seek relief under Civ.R. 26(C)(1) on the basis that the material sought is not relevant to the subject matter involved in the pending action. See, e.g., *Herrick-Hudson, L.L.C. v. Cleveland-Cuyahoga Cty. Port Auth.*, 8th Dist. Cuyahoga No. 104053, 2016-Ohio-7716, ¶ 22. Similarly, material

subpoenaed pursuant to Civ.R. 45 " 'must have some relevance to [the proceeding] and be reasonably necessary[.]' " *Martin v. The Budd Co.*, 128 Ohio App.3d 115, 119 (9th Dist.1998), quoting *McMillan v. Ohio Civ. Rights Comm.*, 39 Ohio Misc. 83, 94 (C.P. 1974).

**{¶35}** Civ.R. 26(C), captioned "Protective Orders," and Civ.R. 45(C), captioned "Protection of Persons Subject to Subpoenas," provide protection for non-parties and their business information and trade secrets. On motion of a party or any other person from whom discovery is sought, a trial court "may make any order that justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense," including orders that provide that the discovery will not be allowed. Civ.R. 26(C). In addition, Civ.R. 26(C)(7) specifically provides that a protective order is appropriate when a trade secret, or other confidential research, business development, or commercial information is sought.

**{¶36}** Civ.R. 45(C)(3), reads in relevant part:

On timely motion, the court from which the subpoena was issued shall quash or modify the subpoena, or order appearance or production only under specified conditions, if the subpoena does any of the following:

* * *

(b) Requires disclosure of privileged or otherwise protected matter and no exception or waiver applies;

* * *

(d) Subjects a person to undue burden.

**{¶37}** Civ.R. 45(C)(5) provides:

If a motion is made under division (C)(3)(c) or (C)(3)(d) of this rule, the court shall quash or modify the subpoena unless the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the

Case No. 19 MA 0116

person to whom the subpoena is addressed will be reasonably compensated.

{¶38} Under Civ.R. 45(C), a trial court may quash or modify a subpoena if it subjects a person to an "undue burden." Ohio courts interpreting the Civil Rule have found that the person seeking to quash the subpoena must demonstrate the undue burden. *Fisher v. Doe*, 1st Dist. Hamilton No. C-160226, 2016-Ohio-7383, 63 N.E.3d 1236, ¶ 8, *McDade v. Morris*, 9th Dist. Summit No. 27454, 2015-Ohio-4670, 2015 WL 7075344, ¶ 9. Once an undue burden is established, the burden of proof shifts to the party seeking the discovery, who must demonstrate a substantial need for the materials that cannot be met through alternate means without undue hardship. *Fisher* at ¶ 8, *McDade* at ¶ 9.

{¶39} Absent an abuse of discretion, a trial court's decision to quash a subpoena will not be overturned. *State v. Glasure*, 7th Dist. Carroll No. 652, 2001-Ohio-3319, *1., citing *Petro v. N. Coast Villas Ltd.*, 136 Ohio App.3d 93, 96 (9th Dist. 2000). An abuse of discretion constitutes more than an error of law or judgment, it implies the trial court acted unreasonably, arbitrarily, or unconscionably. *State v. Adams*, 62 Ohio St.2d 151, 157, 404 N.E.2d 144 (1980). "It is not enough that the reviewing court, were it deciding the issue de novo, would not have found that reasoning process to be persuasive, perhaps in view of countervailing reasoning processes that would support a contrary result." *AAAA Enterprises, Inc. v. River Place Cmty. Urban Redevelopment Corp.*, 50 Ohio St.3d 157, 161, 553 N.E.2d 597 (1990).

{¶40} While a discovery order is ordinarily examined for an abuse of discretion, the interpretation of a civil rule presents a question of law, which is reviewed de novo. *Estate of Brummitt v. Ohio Mut. Ins. Group*, 6th Dist. Erie No. E-17-014, 2017-Ohio-8507, ¶ 14, appeal not allowed sub nom. *Estate of Brummitt v. Ohio Mut. Ins. Group.*, 152 Ohio St.3d 1446, 2018-Ohio-1600, 96 N.E.3d 300, ¶ 14 citing *Gumins v. Ohio Dept. of Rehab. & Correction*, 10th Dist. Franklin No. 10AP-941, 2011-Ohio3314, ¶ 11. However, any question concerning the propriety of the trial court's decision as it relates to the facts of the matter is reviewed for an abuse of discretion. *Large v. Heartland-Lansing*, 7th Dist. Belmont No. 12 BE 7, 2013-Ohio-2877, 995 N.E.2d 872, ¶ 13.

**ANALYSIS**

**ASSIGNMENT OF ERROR**

**THE TRIAL COURT ERRED AS A MATTER OF LAW AND ABUSED ITS DISCRETION IN GRANTING [REESE'S] MOTIONS TO QUASH AND FOR PROTECTIVE ORDER.**

**{¶41}** Although Lindsay asserts a single assignment of error, it advances four issues presented for review. First, Lindsay contends that the information requested is relevant to the Tennessee action and, therefore, discoverable pursuant to Civ.R. 26. Second, Lindsay argues that Reese failed to meet his initial burden under the civil rules to show that the subpoena constituted an undue burden. Third, Lindsay asserts that it has demonstrated a substantial need for the information, which was not available through any other means. Finally, Lindsay contends that the trial court should have exercised its authority to modify the subpoena to the extent that it determined proprietary information or trade secrets were being sought, after an in-camera inspection.

**{¶42}** Reese counters that the information sought by Lindsay is not relevant to the Tennessee action and that the information is available through a public records request. Reese's appellate brief does challenge Lindsay's remaining assertions, but, instead, focuses on the abuse of discretion standard and argues that we are without authority to reverse the judgment entry based on our limited standard of review.

**{¶43}** Having reviewed the record in this case, we find that the information sought by Lindsay was not relevant to the Tennessee action. Tennessee's decision to remove the X-LITE from its QPL predated the Eimers' accident, and, as a consequence, predated Eimers' advocacy against the Lindsay and the X-LITE. We further find that the information sought by Lindsay, although arguably relevant to a tortious interference claim, will not reasonably lead to the discovery of admissible evidence in a negligence and product liability case.

**{¶44}** Finally, Reese's alleged relationship with Eimers is not born out by the record. Lindsay concedes as much when it argues "[i]n light of such overwhelming evidence of the symbiotic relationship between [Durkos and Eimers], and evidence

*suggesting* [Reese] *may* have assisted in their endeavors against X-LITE*,"* Lindsay served the subpoena at issue in this appeal on Reese.  (Emphasis added)(Response at 10.)  To the extent that Lindsay has failed to demonstrate that Reese played even a negligible role in Eimers' efforts against Lindsay and the X-LITE, we find that the subpoenaed information is not relevant.

**{¶45}** Even assuming arguendo that we disagreed with the trial court's conclusion that the information sought by Lindsay is not relevant, we do not find that conclusion "so palpably and grossly violative of fact and logic that it evidences not the exercise of will but the perversity of will, not the exercise of judgment but the defiance thereof, not the exercise of reason but rather of passion or bias." *Huffman v. Hair Surgeon, Inc.*, 19 Ohio St.3d 83, 87, 482 N.E.2d 1248 (1985), citing *State v. Jenkins*, 15 Ohio St.3d 164, 222, 473 N.E.2d 264 (1984).  Accordingly, we find that Lindsay's sole assignment of error is meritless.

## CONCLUSION

**{¶46}** In summary, we find that the trial court did not abuse its discretion in concluding that the requested information was not relevant to the Tennessee action.  Accordingly, the judgment entry of the trial court is affirmed.

Waite, P.J., concurs.

Robb, J., concurs.

Case No. 19 MA 0116

[Cite as *Byrd v. Lindsay Corp.*, 2020-Ohio-5461.]

_____

For the reasons stated in the Opinion rendered herein, the assignment of error is overruled and it is the final judgment and order of this Court that the judgment of the Court of Common Pleas of Mahoning County, Ohio, is affirmed. Costs to be taxed against the Appellants.

A certified copy of this opinion and judgment entry shall constitute the mandate in this case pursuant to Rule 27 of the Rules of Appellate Procedure. It is ordered that a certified copy be sent by the clerk to the trial court to carry this judgment into execution.

## NOTICE TO COUNSEL

**This document constitutes a final judgment entry.**